JUDGE PEYOE
delivered the opinion op the court.
Leopold Hartfield, the owner of a distillery in the county of Green, contracted with Dorn, Barkhouse & Co., of the city of Louisville, to sell his whisky, for which they were to receive a commission of five per cent on sales, one per cent for advances made, with the current bank rate of interest thereon, the product to be held at his (Hartfield’s) price for four months, after which time Dorn, Barkhouse & Co. had the right to sell it at the usual market-price. Hartfield became largely indebted *464 to his commission merchants for advances made, and in order to enable them to make sales, as well as for their own indemnity, forwarded to them the warehouse receipts for the whisky as it. was distilled and placed in the bonded warehouse connected with his distillery, each barrel being identified by the number marked upon it, and the numbers corresponding therewith embodied in the warehouse receipts.
After the execution 'of this contract ITartfield made five hundred and forty-eight barrels of whisky, all of which were placed in the government or bonded warehouse, and the warehouse receipts inclosed to Dorn, Barkhouse & Co. One hundred barrels of this whisky were sold to Thierman & Prante, of Louisville, which were withdrawn by them in January, 1871, and forty-eight barrels to Chambers Bros. & Co. The sale to Chambers Bros. & Co. was made some time in the year 1870, and the following receipt or certificate delivered to them by. Hart.field through his agents, Dorn, Barkhouse & Co.:
“The above forty-eight barrels of copper whisky, serial numbers 60 to 107, inclusive, are stored in our distillery warehouse, No. 176, at Camp Knox, Green County, in the Fourth District of Kentucky, and are deliverable to the order of Chambers Bros. & Co., herein written on the margin, on return of this certificate, and on payment of tax, storage, cooperage, and insurance thereon from the 16th of July, 1870.
(Signed) L. Hartfield,

Proprietor of Distillery Warehouse.

Test: B. E. Courts, United States Storelceeper.”
This receipt for the forty-eight barrels of whisky was first pledged by Chambers Bros. & Co. to Newcomb, Buchanan & Co. for the loan of money; but in a short time thereafter the latter purchased the whisky, and became the absolute owners so far as Chambers Bros. & Co. could confer title. This sale was made and the receipt delivered to the appellants (New-comb, Buchanan & Co.) in December, 1870. On the 18th of *465 January, 1871, Hartfield, in conjunction with Julius Dorn, sold' to Newcomb, Buchanan & Co. all the whisky that was then unsold in the bonded or distillery warehouse of Hartfield,supposed to be about three hundred and fifty barrels. This sale embraced all the whisky except that sold to Thierman & Prante and to Chambers Bros. & Co.; and appellants, having purchased the whisky of Chambers Bros. & Co., claimed to be ■ the owners from the 18th of January, 1871, of all the whisky except that sold to Thierman & Prante.
At the time of the purchase made on the 18th of January, 1871, only a portion of the warehouse receipts were delivered over to the appellants, and the balance were delivered on the 20th and 21st of the same month, when it was ascertained from the receipts that there were three hundred and eighty-one barrels included in the purchase.
Between the 14th and 28th of February, 1871, numerous creditors of Hartfield instituted their separate actions against him in the Green Circuit Court, alleging that he was about to make a fraudulent disposition of his property to- avoid the payment of his debts, and obtained attachments which were placed in the hands of the sheriff, and claimed by the appellees (the creditors) to have been levied by that officer on the three hundred and eighty-one barrels of whisky.
All the proof introduced on the question of fraud conduces to show that Hartfield was making efforts to so dispose of' his property as to avoid the payment of his debts, and the attachments Avere properly sustained.
The actions by the attaching creditors were consolidated, and by change of venue transferred to the Adair Circuit. New-comb, Buchanan & Co., appellants, upon their petition were made parties to the pi’oceeding in behalf of the creditors, and claimed that they were the owners of the whisky prior to the date at which the claims of the various creditors'Avere asserted by reason of their purchase from Chambers Bros. & Co. and *466 Hartfield. While the actions were being prepared for trial some compromise seems to have been made as to all the whisky except one hundred barrels, and these, numbered from 68 to 167, inclusive, are alone the subject of this litigation.
The actions having been transferred to equity, the chancellor upon the hearing in the court below adjudged that the one hundred barrels of whisky were first liable to the claims of the attaching creditors, from which judgment Newcomb, Buchanan & Co. have appealed.
The judgment below is sought to be maintained on two grounds: First, that no title to the whisky passed to Newcomb, Buchanan & Co., either under their contract with Hartfield or with Chambers Bros. & Co.; second, that if the sale was complete, the property sold remaining in the possession of the vendor, such sale was constructively fraudulent as to the attaching creditors.
Although many grounds are relied on by counsel of appellants for a reversal of the judgment, we deem it necessary only to determine the essential question involved in the issue, and that is, did Newcomb, Buchanan & Co. acquire a right of property in the whisky by their purchase from Hartfield and from Chambers Bros. & Co.? By the terms of the contract the appellants were to pay the amount of the tax in cash and the remainder in four and six months without interest. The price of the whisky was estimated at seventy cents per gallon short (that is, in bond), the tax being unpaid, and each barrel as containing forty gallons. Upon this estimate the appellants paid in an acceptance on the day of sale four thousand dollars, and in a few days thereafter a like sum in a check on one of the Louisville banks, and before the attachments issued had paid (or nearly so) the full amount due for the whisky, less the tax, and on a final settlement of the account had overpaid the amount due by two thousand six hundred dollars. The most of the warehouse receipts were delivered when the con *467 tract was concluded,- and the balance in a few days after, the whisky to remain in the warehouse at appellants’ option. It was further agreed that the whisky was to be regauged at Louisville under the supervision of appellants, the costs of transportation and regauging to be advanced by them and deducted from the aggregate sum to be paid for the whisky, the price being one dollar and twenty cents per gallon, the quantity to be ascertained by the regauging at Louisville.
Some of the witnesses express their opinions as to the legal effect of the contract, and by their statements have confused to some extent the facts upon which the rights of the parties must be determined; but the recital already made contains in substance the contract between them.
It is now insisted by counsel for the appellees that, inasmuch as the quantity of whisky to be paid for could not be ascertained until it was regauged at Louisville, no title passed to the appellants; that Hartfield could not tell how much money he was to receive from appellants, nor the latter how much whisky they were to receive from Hartfield, until this part of the contract was complied with. If the contract in this case had been for the sale and delivery of one hundred barrels of whisky, to be delivered at Louisville, and the quantity to be there ascertained and paid for at the rate of one dollar and and twenty cents per gallon, there could be no question but that the title to the property would be with the vendor until the delivery and measurement had been made, there being neither identification, payment, delivery, nor the quantity ascertained.
Ghitty on Contracts, page 375, says, “Although a contract for the sale of goods be complete and binding in other respects, the property in them remains in the vendor and at his risk if any material act remains to be done before the delivery, either to distinguish the goods or ascertain the price thereof.”
In Parsons on Contracts, page 441, it- is said, “The property *468 does not pass, absolutely unless the sale be completed, and it is pot completed until the happening of any event expressly provided for, or so long as any thing remains to be done to the thing sold to put it in a condition for sale, or to identify it or distinguish it from other things, or determine its quantity, [f the price depends on this, unless, it is to be done by the buyer alone.”
Although the general doctrine upon the subject of sales of personal property may be readily understood, much difficulty often arises in applying the principle involved to the facts, and particularly in determining whether or not the title passes to the vendee. If the title passes, the sale is absolute and complete; if not, it is merely executory, or an agreement to sell. The facts of this case do not bring it within the rule laid down by either of the elementary writers referred to, for the reason that the sale was completed by the delivery of the property or its representative, the warehouse receipt, before the quantity was. to be ascertained.
In Parsons on Contracts, page 435, it is, said,, “All that is, essential to the sale o,f a chattel at common law is the agreement of the parties that the property in, the subj.ect-matter should pass from the vendor to the vendee for a consideration given or promised to be given by the vendee.”
The evidence in this case shows that neither- of the parties jto the co'ntract were looking to the. delivery of the whisky in Louisville or its. measurement as essential to passing the title to appellants, or as rgstrict-ing the right of the latter to dispose of the whisky as they might deem best for their own interests. The greater portion of the purchase price had not only been paid, but the possession of the whisky delivered to appellants. There was no manual delivery at the date of the contract, for the reason that it was in a bonded warehouse, under the control and in the actual possession of an internal revenue officer, with..the right on his part as an officer of the government to *469 retain the possession until the tax clue upon it was paid. It is true the parties might have gone from Louisville to Green County and released the whisky by paying the tax; but while this may be so, it did not prevent the vendor from delivering to Newcomb, Buchanan & Co. the warehouse receipts that not only passed the title to the whisky, but also gave to them the constructive possession. The delivery of these receipts by Hartfield to appellants placed them in the same condition with reference to the possession and ownership of the whisky that Hartfield Avas in prior to that time. He had no right to enter the Avarehouse or take manual possession of the Avhisky, although his own property, Avithout the consent of the officer having it in custody and the payment of the taxes, and Avhen his receipts Avere passed to appellants they acquired the same right of property and possession. These receipts Avere the Avritten evidences of Hartfield’s title, and represented the whisky that was sold, the numbers in the receipts corresponding with the numbers on the barrels, and their delivery Avas a surrender of the possession by Hartfield; and an acceptance of it by Newcomb, Buchanan & Co.
“ The delivery of Avarehouse receipts is a symbolic delivery Of the property itself; it has the same effect as the delivery of the property, and a transfer of the warehouse receipts by the person in possession has the same effect and force as a transfer of property by the same personT (Burton v. Duryea; 40 Ill. 325.)
In the case of Gibson v. Stevens (8 How. 400), Avhere the vendee of pork and flour held under a warehouse receipt against an attaching creditor, the court adjudged that “it transferred to the vendee the legal title and constructive possession of the property, and the warehouseman from the time of the transfer became his bailee. The delivery of the evidences of title \vas equivalent in the then situation of the property to a delivery of the property itself, and it sufficiently *470 manifests the intention of the parties that the title and possession should pass.”
In How v. Barker (8 California, 614) it was held that “the delivery of a warehouse receipt without assignment is sufficient prima facie to pass the title. Upon -principle, reason, and convenience it is difficult to draw any substantial difference between a bill of lading and a warehouse receipt.”
“A receipt given by a warehouseman for property placed in his possession for storage is not in a technical sense like a bill of exchange or negotiable instrument, but it merely stands in the place of property it represents, and the delivery of the receipt has the same effect in transferring the title to the property as the delivery of the property.” (National Bank v. Walbridge, 19 Ohio State Reports.)
By an act of the legislature of this state, approved March 6, 1869, “all receipts issued by any warehouseman as provided by the act shall be negotiable and transferable by indorsement in blank or by special indorsement, and with like liability as bills of exchange now are, and with like remedy thereon.”
We will not stop to inquire whether the provisions of this act have been so complied with by the parties to this contract of sale as made the warehouse receipts negotiable like bills of exchange, as in applying the common-law rule determining the rights of parties in sales of personal property to the facts of this case it must be adjudged that the title to the whisky passed to the appellants upon the delivery of the warehouse receipts. It is shown by the proof that forty of the one hundred barrels of whisky in controversy were included in the warehouse receipt delivered by Dorn, Barkhouse & Co. to Chambers & Bros., numbered from 68 to 107, and that the remaining sixty barrels were embraced in the sale made on the 18th of January, 1871, and numbered from 108 to 167, and the warehouse receipts containing the number of each one of the sixty barrels delivered on the morning of the 18th of *471 January, 1871, when the contract was made, this receipt making the whisky deliverable to the order of Dorn, Bark-house & Co.
Hartfield was present when the sale was made, and there is no evidence conducing to show any bad faith on the part of the appellants or the agents of Hartfield with reference to these transactions; on the contrary, it is made to appear that Hartfield was as anxious to defraud his own agents, who had made to him these large advances, as any of his other creditors. The greater portion of the purchase money having been paid, and the possession of the whisky transferred by the delivery of the receipts, with the duty imposed on appellants of paying for its transportation to Louisville, and to superintend the regauging in order to ascertain the quantity, are facts showing conclusively that the parties not only intended the property in the whisky to pass, but that the title did vest in appellants upon the purchase made on the 18th of January^ 1871. Fifty barrels of the three hundred and eighty-one purchased had in fact been taken out of bond by appellants prior to the institution of any of these actions, showing that they were claiming this right of property before the claims of creditors were asserted.
This is unlike the case of Brown & Long v. Childs & Co. (2 Duvall, 317). In that case there was no delivery, symbolic or otherwise, but a sale of one thousand barrels of flour, to be delivered by the seller, and two of the members of the court concurred in the affirmance of that judgment for the reason that the flour was not identified by the contract. A sale of personal property without delivery of possession passes the absolute title as between the parties, and so soon as a bargain of sale of personal goods is struck the contract becomes absolute without actual payment or delivery, and. the property and risk of accident to the goods vest in the buyer. (Buffington v. Ulen, 7 Bush, 231; Willis v. Willis, 6 Dana, 48.)
*472 In Macomber v. Parker (13 Pickering, 175), where a kiln of brick had been sold, it is said, “ It is true the bricks were to be counted; but that was to be done to enable the parties to come to a settlement of their accounts, and not for the purpose of completing the sale. Where the goods or commodities are actually delivered, that shows the intent of the parties to complete the sale by the delivery, and the weighing or counting afterward would not be considered as any part of the contract of sale, but would be taken to refer to the adjustment of the final settlement as to the price.”
In Riddle v. Varnum (20 Pick.), “where some act remains to be done in relation to the articles which are the subject of sale, as that of weighing and measuring for the purpose of ascertaining the price of the article sold at the rate agreed on, but the evidence goes to show that it was the intention of the parties to the contract that the sale was absolute, and the property in the thing sold should vest in the vendees, the title passes to the vendee.”
In Graff v. Fitch (58 Ill.) it is said, “While the general doctrine on this subject may be regarded to be that while some act remains to be done in relation to the articles which are the subject of sale, as that of weighing or measuring, and there is no evidence tending to show an intention of the parties to make an absolute sale, the title does not pass to the vendee until such act is performed; yet when it appears that the parties intended that the sale should be complete before the articles sold are weighed or measured, the property will pass before this is done.”
In the case of Terry v. Wheeler (25 New York, 520) the doctrine is held to be, “ Where the sale appears to be absolute, the identity of the thing fixed, and the price for it paid, I see no room for an inference that the property remains the seller’s merely because he agreed to transport it to a given place. I think in such a case the property passes at the time *473 of the contract, and that in carrying it the seller acts as bailee and not as owner.”
The appellants upon the payment of the tax and a demand of the whisky could have maintained an action for its recovery, either against the storekeeper or Hartfield, if after the payment of the tax that officer had delivered the whisky to the latter. The whisky was identified, each barrel by its number, and the possession delivered, so far as the owner could have delivered it, when the sale was made. Nor! do we concur with counsel that in all cases of sales of personal I property without delivery the right of property remains in the* vendor until the quantity is ascertained. This must depend \ upon the character of the contract as well as the necessity for( ascertaining the- amount in order to identify the property or fix the price. It is said that “ the title passes if there is a sale of an ascertained chattel at an ascertainable price;” still every contract of sale or for sale must speak for itself, and the ■ general doctrine as to the right of property applied to the facts of each particular case.
The sale in this case was absolute, and the regauging to be) done at Louisville was merely to enable the parties to make» a final adjustment of their accounts at the price agreed on' ($1.20 per gallon); and if Hartfield had undertaken to trans-' port the whisky to Louisville, in considering this fact in connection with the payment of the money and the .delivery of the warehouse receipts he would be held to have been the bailee of the appellants, and not the owner of the whisky. The possession of the whisky having been delivered at the time of the sale, and before the actions by the appellees were instituted, the question of constructive fraud does not arise. The right of property had passed, and also the possession. It is true that the whisky was not taken hold of by the appellants or removed from the warehouse at the time of the sale, for the reason that the manual possession was not with *474 the vendor, and all the possession he could have delivered at the time the sale was made was by delivering to the appellants the warehouse receipts, when Hartfield, who was the owner and vendor, by the sale vested the appellants with • all the right of property and the only possession he (Hartfield) had. It would be carrying the doctrine'of constructive fraud to such an extent as would virtually prohibit all-such sales to hold that manual possession of the property in a case like this is necessary to avoid the effect of a doctrine that, in the language'of Chief Justice Robertson, “is generally felt and admitted to be scarcely less consistent with sound policy than the harmony of legal. science.” (Daniel v. Morrison, 6 Dana, 185.)
The actual possession of the whisky was really with the storekeeper as agent of the government, and the actual possession being in another than the real owner, the doctrine of constructive fraud does not apply. The party holding the property becomes by reason of the sale the bailee of the vendee. (Robbins v. Oldham, 1 Duvall, 29; Butt v. Caldwell, 4 Bibb, 458.)
The judgment of the court blow is reversed, and cause remarided with directions to render a judgment canceling the bond executed by the appellants for the forthcoming of the whisky and determining that the appellants are the owners and entitled to the possession of the whisky in controversy. The judgment is affirmed as to Hartfield.