# Bogle's Administrator v. Thompson.

(Decided June 11, 1929.)

(As Modified, on Denial of Rehearing, October 15, 1929.)

GORDON & LAURENT and SQUIRE R. OGDEN for appellant.

BRUCE & BULLITT, LEO T. WOLFORD and EUGENE B. COCHRAN for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

The Kentucky Title Trust Company, as administrator of William Y. Bogle, brought this action April 12, 1927, against John B. Thompson upon 29 warehouse receipts issued by Thompson covering 145 barrels of Old Jordan whisky, alleging that by the receipts Thompson agreed to hold the whisky in a warehouse subject to the order of the holder of the warehouse receipts, and to deliver the whisky only upon the return of the receipts properly indorsed, but that, in violation of his agreement, Thompson had, without the consent of Bogle, the

holder of the receipts, sold and delivered the whisky to others without the knowledge of Bogle or his representatives. Judgment was prayed for the value of the property. Thompson answered, denying the allegations of the petition, and pleading usury and the limitation of five years. At the conclusion of the evidence the court peremptorily instructed the jury to find for the defendant. The plaintiff appeals.

The receipts are all in the same words and as follows:

"Old Fort Spring Distillery.

"No. 19847 Series A
Harrodsburg, Ky. March 10, 1913

"Received in the Old Fort Spring Distillery Bonded Warehouse No. 63 Eighth District of Kentucky, for account and subject to the order of John B. Thompson, deliverable only on return of this receipt properly endorsed and on payment of all taxes on same and storage from the date of inspection at the rate of five cents per barrel per month outage guaranteed not to exceed one gallon in excess of the amount allowed by law: Five barrels Old Jordan whisky, entered into bond as follows: (Here follows serial numbers and description).

"This receipt is issued in deference to the laws of the United States and the State of Kentucky, defining and regulating the duties of warehousemen.

"(Signed)    J. C. Wilson, Warehouseman.
"(Signed)    John B. Thompson, Distiller."

On the back of each receipt is this endorsement:

"Danville, Ky.

"I hereby certify that the records of my office show that the within described packages numbered 102850—4 are on deposit in the within named warehouse and that this is the only warehouse receipt covering said packages upon which said facts have been certified by me.

"Given under my hand this 1st day of April, 1916.

"(Signed)    Jno. W. Hughes,
"Collector 8th Dist. Ky."

On January 7, 1916, Thompson executed to H. E. Williams in New York three notes each for $5,000, dated December 23, 1915. Williams on the same day sold these notes to William Y. Bogle. On April 24, 1916, Williams, who then owed Bogle $5,000, executed to Bogle a note for $20,254.17, with Thompson's note for $15,000, of that date, as collateral with 112 shares of the stock of the Great Neck Realty Company, and took up the three notes for $5,000 each, executed by Thompson on January 7. Thus things ran along until February, 1919. At that time Thompson owed the Hargate Corporation notes amounting to $34,795. Thompson wished to take up these notes, also the $15,000 note which Bogle held with the 112 shares of stock of the Great Neck Realty Company as collateral for the Williams note, $20,254.17, and by a writing on that day he agreed, among other things, to turn over to the Hargate Corporation $34,866.13 in negotiable warehouse receipts for Old Jordan whisky, 1913-4. By an indorsement on the contract the time was extended to March 10, 1919. Thompson delivered the warehouse receipts to the Hargate Corporation, and on March 11 the Hargate Corporation delivered to Bogle the warehouse receipts for 145 barrels of whisky, here in controversy, which Bogle took at $3.50 a gallon, he paying the corporation $559.91, being the balance of the price of the whisky over and above the amount of his debt and interest. Bogle then delivered to the company the 112 shares of stock of the Great Neck Realty Company, and it delivered to him the 29 warehouse receipts here in controversy. On July 15, Bogle wrote to the Old Fort Spring Distillery, Harrodsburg, Ky., as follows:

"Gentlemen: Please advise at what rate you could insure whisky for which I hold certificates Nos. 19847, 19849 and 20383 to 20409, inclusive.

"Yours very truly."

On July 17, he received this answer, signed by J. B. Thompson, Distiller, by T. W. Latta:

"Dear Sir: Replying to yours of the 15th. We find that the insurance people are making a rate of $1.35 to insure whisky. We wrote you on April 19th in regard to insuring this whisky, and could have gotten a rate of 98c. for you at that time. If you desire to carry this insurance we will have it placed for you, but we believe the rate is too high for the

risk. There is practically no risk and we would advise that you carry it yourself rather than pay such a high rate.".

On July 21 Bogle wrote again as follows:

"Gentlemen: Your favor 17th at hand. Please have insured for *$15,000, in name of William Y. Bogle,* at rate quoted in your letter, the whisky covered by certificates No. 19847, 19849 and 20383 to 20409, inclusive, and send me policies with bill covering premium.
"Yours very truly."

Several other letters passed between Bogle and some insurance agents at Harrodsburg. On December 7, 1921, Bogle wrote to Col. John B. Thompson at Harrodsburg, Ky., as follows:

"Dear Sir: You will perhaps remember the writer by name, in connection with exchange some years ago, of whisky certificates for your promissory notes held by the writer at that time. Have not yet disposed of the certificates (Nos. 19847, 19849 and 20383 to 20409 inc.) (29 certificates) covering 145 barrels 'Old Jordan' Whisky, and would very much appreciate your giving me the following information.
"My understanding is the law requires that the distiller shall gauge the whisky after it has been in storage seven (7) years, and presume you gauged the lots covered by above certificates; would like to know contents at that time. Will you also please advise me the present county and state taxes per gallon.
"Any other information which you can give me, which would be of value in negotiating the sale of the certificates would be appreciated.
"Thanking you for your courtesy.
"Yours very truly."

No answer was received to this letter. In the meantime, in September, 1920, when Col. Thompson was in New York, he testifies that George A. Lee produced to him the receipts in question, and requested that the whisky be bottled and shipped, promising to send the receipts in. Thompson, on September 15, 1920, wired the

542

distillers to bottle the whisky and ship it. After 92 barrels of the whisky had been shipped and the receipts had not come in, T. W. Latta, who was shipping the whisky for Thompson, concluded not to ship any more until he got the receipts. The remainder of the whisky remained in the warehouse until December, 1925, when Thompson had the whisky sold to pay the charges on it, and afterwards disposed of it in his own name. Bogle died December 15, 1924, and there was no notice to him or his representatives of the sale of the whisky, and no demand was made to pay the charges. The Eighteenth Amendment to the Constitution of the United States was adopted in 1919. The Prohibition Act took effect January 17, 1920. (27 USCA).

By the statute in force when this whisky was made, the whisky could remain in the warehouse only eight years without the payment of the federal tax thereon. U. S. Compiled Statutes, sec. 5986. The Prohibition Act contained these provisions:

"Provided, that nothing in this Act shall prohibit the purchase and sale of warehouse receipts covering distilled spirits on deposit in government bonded warehouses, and no special tax liability shall attach to the business of purchasing and selling such warehouse receipts." Title 2, sec. 3; 27 USCA sec. 12.

"Nothing herein shall prevent the storage in United States bonded warehouses of all liquor manufactured prior to the taking effect of this Act, or prevent the transportation of such liquor to such warehouses or to any wholesale druggist for sale to such druggist for purposes not prohibited when the tax is paid, and permits may be issued therefor. . . ." Title 2, sec. 37; 27 USCA sec. 57.

The first question presented is, was the action barred by limitation? And this turns on the question, when did the cause of action accrue? Section 4770, Ky. Stats., provides:

"All receipts issued by any warehousemen as provided by this chapter shall be negotiable and transferable by endorsement in blank, or by special endorsement, and with like liability as bills of exchange now are, and with like remedy thereon."

Section 2515, Ky. Stats., provides:

"An action . . . upon a bill of exchange . . . shall be commenced within five years next after the cause of action accrued."

Appellee pleaded the five-year statute of limitation, and insists that under section 4770, Kentucky Statutes, the five-year statute of limitation applies. Appellant insists that section 4770 only regulates the remedy of the holder of the receipt, and has no reference to limitation which is a matter of defense only. See St. Paul Building Co. v. Baltimore, 149 Md. 685, 132 A. 51; Fish v. Collins, 164 Wis. 457, 160 N. W. 163; Helbig v. Citizens' Ins. Co., 234 Ill. 251, 84 N. E. 897. But the court finds it unnecessary to decide this question, in view of its conclusion as to when the statute began to run. In Newcomb v. Cabell, 10 Bush, 460, this court held that the delivery of warehouse receipts, such as those in controversy, is a symbolic delivery of the whisky, and has the same effect as the delivery of the property itself; a transfer of the warehouse receipts by the person in possession of them has the same effect and force as the transfer of the property by him. This rule has been followed by the court in many subsequent cases, and it follows that Bogle, after he got the receipts, was the owner of the whisky, and that Thompson was simply the bailee in possession. The general rule as to limitations between bailor and bailee is thus stated in 37 C. J. 193:

"Unless the term of the bailment is limited, no lapse of time bars the bailor's right to the property, and his right of action does not accrue and the statute does not begin to run until denial of the bailment and conversion of the property by the bailee or some one claiming under him."

To same effect see 17 R. C. L. p. 800, sec. 167; Story on Bailments, sec. 107; Woods v. Latta, 35 Mont. 9, 88 P. 402.

Thompson, by the writing delivered to Bogle, acknowledged the receipt of the whisky deliverable only on the return of the receipts, properly indorsed, and on payment of taxes and storage charges. The term of the bailment was not limited, and the form of the transaction indicated that the bailment was to continue until demanded. Bogle did not make a demand for his whisky. By section 4778, Ky. Stats., if the charges thereon were

not paid for twelve months, Thompson had the right to sell the whisky for the charges, upon giving proper notice. He could at any time notify Bogle that he would not keep the whisky longer, and thus terminate the bailment on reasonable notice; or, if his charges were not paid after twelve months, he could sell the whisky for the charges, and thus terminate the bailment. Until reasonable notice was given by one or the other, the bailment continued, and the statute did not begin to run, for it was clearly contemplated by the contract that the whisky would remain in the warehouse until the receipts were presented and the whisky was demanded. The reason for the rule that the statute does not run between bailor and bailee as long as the relation exists is that it is a trust relation, and it is well settled that in cases of trust the statute does not run until the trust is disclaimed by unequivocal acts or words brought home to the other party. Bacon v. Rives, 106 U. S. 99, 1 S. Ct. 3, 27 L. Ed. 69; Speidel v. Henrici, 120 U. S. 377, 7 S. Ct. 610, 30 L. Ed. 718. Although the whisky was sold, the statute did not run against Bogle when he had no notice of the conversion. 6 C. J. 1155; Sodowsky v. McFarland, 3 Dana 204. The first notice that the whisky was no longer on hand was the letter written by Thompson to J. P. Nolan, the attorney of Bogle's executor, on June 29, 1926, telling him that all the whisky had been sold. The statute began to run then, and not before.

As the whisky, under the contract, was only deliverable upon the return of the receipts properly indorsed, Thompson took the risk when he delivered the 92 barrels of whisky without the production of the receipts. As to the remainder of the whisky, a different question arises. Under section 4778, Kentucky Statutes, Thompson had the right to sell the whisky when the charges had not been paid for twelve months after they were due, but that section makes the following provision as to the notice to be given:

"Such notice shall contain the day and place of sale, a description of the property to be sold, if known; if not, a description of the package in which it is contained, the amount of charges and the name and place of residence of the owner, if known; and the warehouseman, at least ten days before the day of sale, shall mail to the owner a notice of the time and place of sale, with a description of the article to be sold and amount of charges."

The sale of the whisky, made by Thompson, under the evidence, did not conform with the statute. Thompson had notice that Bogle held the receipts, for he had received correspondence from him, and the sale without notice to Bogle, as provided by statute, was void. At least there was some evidence that Bogle was the last known owner, and this question was for the jury.

While there is a conflict of authority, the Kentucky rule is that the measure of damages between bailor and bailee is the fair market value of the property at the date of the conversion, and the jury may in their discretion allow or refuse to allow interest from that date. Newcomb-Buchanan Co. v. Baskett, 14 Bush, 667; White Sewing Machine Co. v. Conner, 111 Ky. 830, 64 S. W. 841, 23 Ky. Law Rep. 1125, and cases cited.

Although the three notes, each for $5,000, given by Thompson to Williams January 7, 1916, and bearing interest from December 23, 1915, were void for usury under the laws of New York, Williams took up these notes in his settlement with Bogle, and executed to Bogle his note for $20,254.17 with Thompson's new note for $15,000 and certain stock as collateral, and, when Bogle bought the whisky receipts in settlement of the latter note of Williams, the usury in Thompson's original notes in no manner affects his title thereto.

Judgment reversed, and cause remanded for further proceedings consistent herewith.