# Slack v. Bryan.

Jan. 12, 1945.

Fred Lisanby for appellant.

Leslie W. Morris for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

This is an action for claim and delivery of a dia-
mond of the alleged value of $2,000, claimed by the
plaintiff, F. F. Bryan, to have been given him years ago
by his father, loaned back to him, then to have passed
into the custody of his mother, and after her death to
her daughter, the plaintiff's sister, Mrs. Mary Bryan
Slack, the defendant. The verdict and judgment were
for the plaintiff. The defendant seeks a reversal.

The petition follows Section 180 et seq., Civil Code
of Practice, which define an action in ordinary for the
recovery of specific articles of personal property in
substitution of the action of replevin. Stimson's Ex'x
v. Tharp, 284 Ky. 389, 144 S. W. 2d 1031. The answer con-
tained a traverse and the affirmative claim that the de-
fendant acquired title and possession of the diamond
through a bequest of her mother, who died in August,
1943; that she got it under the will of her husband, the
father of the parties, who died in 1929, and that he got
it under the will of his uncle, Jasper Offutt, who died in
1911. The answer pleaded the five-year statute of lim-
itations in bar of the plaintiff's right of action. A plea
of laches was also made. The reply only traversed the
affirmative claims although the alleged facts with re-
spect to how the diamond came into the defendant's
possession were not denied.

There is not much variance in the factual conditions,
but the circumstances afford different conclusions as to
the consequences or what the facts establish or prove.
In brief, the story is that in 1911 Jasper Offutt bequeath-
ed the diamond to the father of the parties, Dr. F. F.
Bryan, Sr. His brother, George O. Bryan, who lived in
Arkansas, testified that about 1914 or 1915 Dr. Bryan
told him he had given to his son, Frank, the pin and also
a watch which had been left him by their uncle. He sug-
gested to his brother that it was not wise for Frank to
be wearing the pin at the races and in such gatherings
where it was likely to be stolen, and Dr. Bryan agreed.
On the witness' next visit to Georgetown, three or

four years later, he noticed that Frank was not wearing the pin and he asked his brother about it. He replied that after his remark on his former visit that the diamond might be "nipped," he had asked his son to loan it to him and let him keep it for him, and also that he liked to see Betsy, his wife, wearing it. Frank had "turned the pin over to him as requested as a loan." Another disinterested witness testified to a statement by Dr. Bryan in 1921 or 1922 tending to corroborate this; and another related a conversation in 1925 or 1926 with Dr. Bryan and his son which was definitely to the effect that the Offutt pin and watch had been given Frank, who was wearing them on that occasion. The son had often worn the pin during these years and had taken it several times to a jeweler to be cleaned. Both the father and mother wore it occasionally. But it appears that the mother did not wear it after her husband's death in 1929, and had kept it with her jewels. Not long before her death in 1943 she had her daughter take her little bag of jewels to her safety box in Lexington. At this time the stone was unmounted and was with them. The mother bequeathed all jewelry to her daughter, the defendant, excepting a described ring to her son.

There is some evidence introduced by the defendant tending to show that a different stone than that involved had been worn by her brother. The sister testified that on one occasion in 1918, when she was wearing a ring in which the diamond had been set, the plaintiff wanted her to let his wife wear it on a visit she was going to make, saying that she, his wife, "has as much right to wear it as you have." The sister refused, saying it was her mother's ring and she had entrusted her with it. He became angry, but asserted no claim of ownership. This, it is argued, is an indirect admission that his mother owned the ring. The plaintiff denied this conversation and stated the diamond had never been set in a ring. All other evidence in the case rather corroborates him. The defendant testified that prior to their mother's death, her brother asked her, the sister, "Don't you think it is time she is dividing up those diamonds?" This is not denied. There is no evidence of any claim of ownership of the stone ever having been asserted by the plaintiff until sometime after his mother's death. Of course, he was barred from testifying as to any conversation or transaction with his deceased parents. Sec. 606, Civil Code of

Practice. This silence and the absence of a claim of ownership through the years is negative evidence 'as to the essential fact, namely, whether the diamond had been given to him outright thirty years or more before. On the other side, there is no evidence that either the father or mother ever made any statement or did anything inconsistent with the plaintiff's claim.

The issue of fact was only this: Did the father give the diamond to his son and later receive it back into possession as a loan? As we have stated, the essential facts of the transaction presented by the plaintiff are not contradicted, but there are countervailing circumstances, principally the possession for so long a time by the father and mother, which afford a reasonable inference to the contrary. The appellant submits that she was entitled to a directed verdict upon the issue of fact as to the gift of the diamond, or, in any event, upon the ground that the cause of action is barred by the statute of limitations.

On the first proposition, the evidence is clearly sufficient to take the case to the jury and support the verdict. Hall's Adm'x v. Hall's Adm'r, 145 Ky. 751, 141 S. W. 70; Morgan v. Williams, 179 Ky. 428, 200 S. W. 650; Chipman's Adm'r v. Gerlach, 286 Ky. 157, 150 S. W. 2d 633.

In the matter of a bar to recovery of the diamond because of the statute of limitations, our postulate must be that the plaintiff's claim was established. The question then is: Was the strength of that right destroyed by the statute? The five-year statute applies. Ky. Rev. Stats. 413.120 (6); Fidelity & Columbia Trust Co. v. McCabe, 169 Ky. 613, 184 S. W. 1124.

The plaintiff established what was anciently called a gratuitous loan, or, as called in the civil law, a depositum, where custody, as opposed to service, is the chief purpose, or a Loan for Use, or commodatum, where a chattel is to be used by the bailee without reward and then specifically returned to the bailor. Story on Bailments, Secs. 6, 219; 6 Am. Jur., Bailments, Secs. 9, 11. Both classes are now embraced in the general classification of a gratuitous bailment. 6 Am. Jur., Bailments, Secs. 14, 23; Green v. Hollingsworth, 35 Ky. 173, 5 Dana 173, 30 Am. Dec. 680; Hargis v. Spencer, 254 Ky. 297, 71 S. W. 2d 666, 96 A. L. R. 903. In such a case, where the bailee has permissive possession of a chattel with-

out limit of time, the statute of limitations does not run against the bailor's right to bring an action to recover the chattel so long as the bailment lasts. And where there is no limit of time or definite time fixed for the return, or termination is to be at the will of the bailor, there must be a demand made for the return and a refusal or some other act on the part of the bailee of which the bailor has notice which is hostile or inconsistent with the bailment and such as would constitute a denial of the bailment or a conversion of the property. It is then that there is a breach of the express or implied terms of the contract. It is then that the bailor's cause of action accrues and the statute of limitations is set in motion. Bogle's Adm'r v. Thompson, 230 Ky. 538, 20 S. W. 2d 173; 6 Am. Jur., Bailments, Secs. 152, 155, 158, 336, 340, 342; 34 Am. Jur., Limitations, Sec. 118; 37 C. J. 840; Whitehead v. Gormley, 116 Okl. 287, 245 P. 562, 47 A. L. R. 171. We may here add that there is a qualification of this rule which we shall note in the course of the opinion.

It may be observed that the father did not undertake specifically to dispose of this diamond. He merely bequeathed all of his estate to his wife. The son at least acquiesced in the continuation of the bailment by his mother as bailee. Neither did the mother undertake to dispose specifically of the stone. There is nothing to indicate that she considered this as one of the jewels which she bequeathed to her daughter. It is not shown whether or not the diamond was included in the inventory of either parent. The brother did decline to let his sister continue in possession for he seasonably made a request of her that she deliver it to him. No question is raised as to the right of the defendant as successor in possession of the diamond and as the claimed successor in title to rely upon the statute of limitations, the time reaching back to the period during which her father and mother successively had the stone. Moore's Heirs v. Shepherd, 2 Duv. 125; Buckler's Adm'x v. Rogers, 53 S. W. 529, 22 Ky. Law Rep. 1.

The plaintiff pleaded and proved a prima facie case, so the burden of going forward with the proof to establish that his cause accrued more than the statutory period of five years before he instituted the action shifted to the defendant. 6 Am. Jur., Bailments, Sec. 371; Fidelity & Columbia Trust Co. v. McCabe, 169 Ky. 613, 184 S. W. 1124, 1125. This is because a plea of limitations

is an affirmative defense. It is especially so where the case involves a continuing trust (Gabbard v. Gabbard, 294 Ky. 572, 172 S. W. 2d 214) and a bailment of this kind is essentially a form of such a trust. 6 Am. Jur., Bailments, Sec. 57. It may be noted that in a gratuitous bailment case (an action to recover a stallion) we have held that where the bailor proved ownership and breach of the agreement, the burden was upon the bailee to prove a waiver as that is an affirmative defense. Treacy v. Barclay, 6 S. W. 433, 9 Ky. Law Rep. 707. Of course, if the defendant pleads and proves facts sustaining his plea of limitations, then to neutralize or avoid the effect, the plaintiff must pick up the burden and offer proof, e. g., contradictory evidence or evidence of legal disability. Stair v. Gilbert, 209 Ky. 243, 272 S. W. 732. But here the defendant failed in pleading and in proof, so, of course, there was nothing for the plaintiff to avoid.

The defendant pleaded facts as to the claimed ownership and the possession of her father then her mother and then herself, giving the approximate dates, which were proved by plaintiff as above described. She stated what she was informed and believed to be the plaintiff's ground of claim, and pleaded that in the event he should be able to establish his claim, his right to recover was barred by the five-year statute of limitations. That, we think, was only a legal conclusion from an insufficient allegation of facts justifying it, for, as above stated, the plaintiff's cause of action did not accrue until there had been a repudiation of the bailment by the bailee. It was essential that the defendant plead and prove such ultimate fact or facts from which it could be inferred. Redford v. Crowe's Adm'x, 225 Ky. 142, 7 S. W. 2d 842; 37 C. J. 1219. To avoid possible confusion in respect to the pleading it may be well to observe that it is different where all or sufficient facts are set forth in the petition, it being then required that the defendant only invoke the remedy or protection of the statute. Lilly v. Farmers' National Bank, 56 S. W. 722, 22 Ky. Law Rep. 148; Taylor County v. Bank of Campbellsville, 145 Ky. 389, 140 S. W. 680.

The insufficiency of the pleading followed through into the evidence. The conclusion of a bar is not justified by the facts for there was no evidence of a breach of the terms of the bailment by the bailee at any time antedating five years before the action was filed. The facts

upon which the plea of limitation, though defective, rested were not in dispute, so there was no issue on the point to submit to the jury, as the appellant contends should have been done. It was a question of law for the court to determine, and we think the decision that there was no bar was correct.

We do not overlook the point made by the appellant that one of the prerequisites to maintaining the action to obtain an order of delivery is that the petition or an affidavit must show that the "plaintiff's cause of action has accrued within one year." Civil Code of Practice, sec. 181. This is one of the conditions prescribed for obtaining the order before judgment, Sec. 180, and does not place the burden on the plaintiff of establishing the fact that his cause of action accrued within one year. A party's right to recover the possession of specific personal property by a judgment does not depend upon this provision. Weisenberger v. Corcoran, 275 Ky. 322, 121 S. W. 2d 712; Shewmake v. Shifflett, 205 Ark 875, 171 S. W. 2d 309. Moreover, as was also held in the latter case, even that term was met by establishing the fact that the defendant and those with whom she was in privity had only a permissive possession or use during the whole period.

As stated, the defendant pleaded laches, but the rule of laches is one in equity and is inapplicable in this common law action. However, there is a rule in the law of statutory limitations pertaining to bailment which stems from the principle and is close kin to laches. This rule, recognized by the weight of authority, is, in short, that unless delay in making a demand is expressly contemplated by the parties, under some circumstances the court will presume from the lapse of an unreasonable time that such a demand was made and refused. This is especially applicable where the situation and the relation of the parties are such as to render it improbable that demand should be neglected. The contract of bailment is construed as importing a reasonable time for the return of the chattel, and the court will determine what is a reasonable time from the circumstances in each case. It is said that ordinarily the time in which demand will be deemed to have been made is that stipulated in the statute of limitations as barring the cause of action if not brought after it accrued. Wood on Limitations, Sec. 118; 6 Am. Jur., Bailments, Secs. 341, 343;

34 Am. Jur., Limitation of Action, Sec. 119; Annotation, 47 A. L. R. 181; Campbell v. Whoriskey, 170 Mass. 63, 48 N. E. 1070.

This rule was expounded and applied affirmatively in the leading case of Wright v. Paine, 62 Ala. 340, 34 Am. Rep. 24. A quantity of gold coin was deposited by a farmer with an individual for safe-keeping, to be returned when called for. There was no demand for its return for eleven years and suit was not brought until nearly six years after the demand. The death of the bailee intervened. The court deemed it almost incredible that under the circumstances the bailor would have let the money remain so long in the bailee's hands, "especially when there is an absence of any fact indicating any peculiar relation between them, inviting confidence, and the indifference, or security, which it may beget." It appears that there was no evidence other than as to the fact of bailment, the relation of the parties and the lapse of time. Upon the presumption arising from those three facts the court held the cause of action barred.

Another well considered case is Campbell v. Whoriskey, supra, 170 Mass. 63, 48 N. E. 1070, 1072. An immigrant woman left sums of money from time to time for safe-keeping with a second cousin, who was a man of property, until $632.75 had accumulated in August, 1877. She did not ask for a return of her money until 1890. That and subsequent demands being unsatisfied, she brought suit just within five years after the first demand. The court enunciated the rule we have stated and concluded: "Looking at their arrangement and their relations, we are of opinion that the plaintiff was not bound to demand her money within six years in order to save her rights, and that under all the circumstances her demand was made within a reasonable time." Judgment for the plaintiff was affirmed.

In Shewmake v. Shifflett, supra, 205 Ark. 875, 171 S. W. 2d 309, a diamond ring had been returned to a young man when his engagement to marry was broken. The evidence was in sharp conflict whether he then gave the ring to his sister as an unconditional gift or only for safekeeping, with permission to wear it, but upon the understanding that the ring would be returned to him upon request. The sister had kept and worn the ring for more than twenty years when her brother sued for its recovery. No demand for the return had been

made until recently, or within the period of the statutory limitation of three years. The court accepted as the correct rule with respect to the presumptions or implications arising from the delay as we have above outlined, particularly quoting Sec. 343 of 6 Am. Jur., Bailments, and held that a certain instruction offered by the defendant which would have submitted the question of a bar by reason of the statute of limitations was properly refused. A judgment for the plaintiff brother was affirmed.

In a case decided by this court in 1837, Green v. Hollingsworth, 35 Ky. 173, 5 Dana 173, 30 Am. Dec. 680, it is recited that on a public occasion, during Hollingsworth's campaign as a candidate for the Legislature, when he and his intimate friend, Green, both were ''in a jocund mood,'' Green said to Hollingsworth ''give me your watch, and I will vote for you.'' He did so and Green carried the watch in his pocket, fastened with a twine string. About three weeks later he lost the watch while out hunting. Some time after that Hollingsworth requested its return and later sued and recovered judgment for its value, and Green appealed. The court pointed out that the plaintiff could recover only if the jury found there was a beneficial loan, for otherwise the transaction would have been an illegal one and the parties would have to be left where they were. Upon the hypothesis that there was a bailment without any express time for a return of the watch, the court said:

''If the watch was loaned to Green, when it was to be returned was a fact to be ascertained by the jury from the circumstances proved; and if those circumstances conduced to establish no special time, and, from the nature of the transaction as proved, the jury could have inferred that the parties actually intended a beneficial loan, the law made it the duty of Green to return the watch in a reasonable time. But, in such a state of case, of indefinite loan or use, a court could not decide that Green was guilty of a breach of his implied obligation, in not returning the watch within three weeks, or the time that elapsed before the alleged loss of it.''

Going back to the case at bar. There is no evidence that the plaintiff ever asked or even expressed a wish that the diamond be returned to him that he might keep it permanently after he turned it over to his father sometime between 1914 and 1918. Nor on the other side is

there any intimation of an adverse claim of ownership. It appears that no member of the family wore the diamond after the father died in 1929. The mother had it in her exclusive custody for some fourteen years after that time. Here was a compact family, consisting only of the father and mother, son and daughter, living in the same town or community, and on friendly terms. The diamond was an heirloom. It was not unnatural for the son to have left it with his mother to be kept, as it appears it was, with her own jewels. We think these things insufficient to raise the presumption or implication of law that there was a waiver of ownership by the plaintiff or an adverse holding of the diamond by the father or mother. The trial court was correct, therefore, in declining to direct a verdict for the defendant upon this ground and to submit to the jury the question of limitations.

Judgment affirmed.

Whole Court sitting.