HOUSER, ADMX., APPELLANT, *v.* OHIO HISTORICAL SOCIETY, APPELLEE

[Cite as Houser v. Ohio Historical Society (1977), 55 Ohio App. 2d 241.]

(No. 465—Decided August 16, 1977.)

*Mr. James R. Addison,* for appellant.
*Mr. Fred J. Milligan,* Jr., for appellee.

GREY, J. This is an appeal from the Marietta Municipal Court. Appellant makes two assignments of error:

"1. The judgment was manifestly against the weight of the evidence and contrary to the applicable rules of law.

"2. Trial court erred in finding the statute of limitations barred the filing of the replevin action founded upon contracts in writing."

The first assignment of error is given in general terms and the second more exactly, but both raise essentially the same point and we shall therefore consider them together.

The record discloses the following facts: Mary Dana Houser was a descendant of Israel Putnam, the famous American general and member of the Ohio Company. Around 1934, Mary Dana Houser delivered to the Ohio Archaeological and Historical Society several items of personal property to be displayed at the Campus Martius Museum in Marietta. Among the items delivered were two wedding dresses which were worn by the descendants of General Putnam and a razor hone, a magnet, a bullet mold and carved powder horn which belonged to General Putnam. The powder horn is of particular historical value because on it is carved a representation of Fort William Henry and Fort Edwards, fortifications of the French and Indian War, and is perhaps the only illustration of these fortifications in existence.

The various items were delivered to the Ohio Historical Society on separate occasions and on each occasion a receipt was executed. Below is the language of one of the receipts, but both of them are essentially the same.

"Receipt for Specimens Loaned to the Ohio State Archaeological and Historical Society Columbus, Ohio Division of Campus Martius State Memorial Museum Marietta, Ohio.

Marietta, Ohio, December 13, 1934:

"This is to certify that the specimens enumerated herein, are placed as a loan with The Ohio State Archaeological and Historical Society, Division of Campus Martius State Memorial Museum, for a term of One Year, or more, when they may be withdrawn upon presentation of this receipt."

"Specimens owned by
    *Putnam Family*          "Acknowledged by
    *s/By Mary D. Houser*    *s/Mary D. Houser*
    *Belpre, Ohio R. 1*      *s/Rowena Buell"*

In 1948, Mary Dana Houser requested the return of one wedding dress, which was done. All the other items remained with the Ohio Historical Society. Around the same time, Mrs. Houser made some gifts to the Historical Society. In 1952, Mary Dana Houser died. In 1975, plaintiff-appellant, Helen Houser, was appointed Administra-

trix with the Will Annexed of the estate of Mary Dana Houser. As Administratrix, Helen Houser made a demand upon the Society in October 1975, for the return of these items. This demand was refused and Helen Houser filed an action in the Marietta Municipal Court. The trial court held that the action was barred by the statute of limitations.

The trial court in its decision held as a matter of law that where a cause of action for the return of personal property does not accrue until a demand is made and no demand is actually made within the period of the statute of limitations, the law presumes that demand is made at the end of that period. Specifically, the court found that if appellant's action sounds in replevin, demand would be presumed to have been made at the end of the four year period and that the statute would have run four years thereafter. It further found that if the "Receipt for Specimens Loaned," set out above, constituted a written contract, the demand would have been presumed at the end of the fifteen year period and that the statute would run fifteen years after that. Without ever deciding the nature of the action, the trial court held that forty years had passed from the time of delivery to the time the action was instituted and that therefore the action was barred by the statute of limitations.

We find the assignments of error well taken. The statute of limitations in any case begins to run when the cause of action accrues. In some cases, the cause of action does not accrue until a demand has been made. Demand then becomes the operative fact necessary for the cause of action to exist. The problem is thus presented: If demand is never made, does the statute of limitations ever go into effect and, if so, when? Put another way, may a party indefinitely postpone the operation of the statute of limitations by simply refusing to make a demand? A majority of courts have universally held a demand must be made within a reasonable time and that a plaintiff may not indefinitely suspend and delay the statute's operation as suits his pleasure and convenience. *Hamrick* v. *Indianapolis Humane Society* (C. A. 7, 1959) 273 F. 2d 7, certior-

ari denied 362 U. S. 919; *Townsend* v. *Eichelberger* (1894), 51 Ohio St. 213; *Campbell* v. *Whoriskey* (1898), 170 Mass. 63, 48 N. E. 1070. The issue then becomes, what constitutes a reasonable time? Some courts follow the rule that what is reasonable depends upon the facts and circumstances in each case. *Slack* v. *Bryan* (1945) 299 Ky. 132, 184 S. W. 2d 873; *Farmers & Merchants Bank* v. *Duke* (1942), 112 Ind. App. 589, 44 N. E. 2d 172. Other courts follow the rule that when no demand is made within the statutory period, demand will be presumed to have made at the end of the statutory period. In effect, where a demand is not made, the period of the statute is simply doubled. *Campbell* v. *Whoriskey, supra; Shaw* v. *Silloway* (1888), 145 Mass. 503, 14 N. E. 783.

The rule in Ohio appears to lie somewhere between these two positions. In the leading case of *Keithler* v. *Foster* (1871), 22 Ohio St. 27, it was held that a demand must be made within a reasonable time and, in the absence of special circumstances, demand will be presumed at the end of the statutory period. *Keithler* gives no indication as to what constitutes special circumstances.

In this case, we have a bailment of indefinite duration. The "receipt for specimens loaned" set out above clearly states that the return of the property is conditioned upon the delivery of the receipt and a demand for its return. The rule in Ohio is that where there is a bailment of indefinite duration the cause of action does not accrue until a demand has been made. *Gehres* v. *Ater* (1947), 148 Ohio St. 89; *Toledo Trust Co.* v. *Simmons* (1935), 52 Ohio App. 373. We think the rule laid down in those cases is clearly applicable here.[2]

---

[2] In the case of *Brady* v. *Garrett* (Tex. Civ. App. 1933), 66 S. W. 2d 502, we find a similar case and similar results. In that case the gun which was used to shoot Billy the Kid was loaned by Mrs. Pat Garrett to a saloon keeper for the purposes of putting it on display in the saloon. Evidence of the loan was indicated by a card posted with the gun. In 1918, the saloon keeper closed the business but retained possession of the gun. He died in 1931 and in an action by Mrs. Garrett to recover the pistol the Texas court found, as we have found in this case, that the cause of action did not accrue until demand and a refusal had been made.

In 34 Ohio Jurisprudence 2d 487, 488 Limitations of Actions, Section 3, the purpose of the concept of a statute of limitations is discussed.

"Their object is to suppress fraudulent or stale claims from springing up after long lapses of time and surprising the parties concerned or their representatives, when all the proper *vouchers and evidence* are lost or the facts have become obscure from efflux of time or from the defective memory, death, or removal of witnesses." (Emphasis supplied.)

The basic reason underlying the concept of a statute of limitations is that time erodes both memory and physical evidence. In this case, the proper vouchers and evidence are not lost. The loan receipts have been carefully preserved by Mary Houser and passed on to her administratrix.

We note that a loan to a museum often contemplates a bailment of long duration and we think it is significant that the receipts in this case were made out by Mary Dana Houser in the name of the Putnam Family rather than herself individually. A family exists and survives the death of any of its members. It also should be noted that by the very terms of the loan agreement the bailment was automatically renewable from year to year unless a demand for the return of the goods was made. This loan receipt was executed on a form printed and prepared by the Ohio Historical Society or its predecessor, The Ohio State Archaeological and Historical Society. The Society should be required to adhere to the terms of the agreement as provided therein.

A reading of the record and transcript indicates that an issue was raised as to whether Mary Dana Houser contemplated or made a gift of this property to the Historical Society. The trial court in deciding this matter on the question of the statute of limitations never reached a decision on the issue of gift. This case is therefore remanded to the Marietta Municipal Court for further proceedings.

*Judgment reversed and cause remanded.*

ABELE, P. J., and STEPHENSON, J., concur.