**James C. JOHNSON and Phyllis Carolyn Johnson, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 1116.**

United States District Court
W. D. Arkansas,
El Dorado Division.

July 31, 1967.

a member of the U. S. Naval Forces in June, 1953, he was stricken with poliomyelitis, resulting in serious impairment with the functioning of his left side, including his left hand and left leg, and other parts of his body. He was medically discharged from naval service in 1954 as totally disabled. He was subsequently awarded service-connected total (100%) disability by the Veterans' Administration, and has continued to receive benefits from this service-connected malady.

On January 17, 1955, Mr. Johnson sought and obtained admission to the Veterans' Administration Hospital in Shreveport, Louisiana, in an effort to restore or partially restore use in his left hand, which had been impaired by his polio onset in 1953. After approximately two months of examination, and non-surgical treatment in the VA Hospital, it was decided to perform a "tendon transplant" operation on his left hand and wrist. The operation was performed by one of the regular employees of the Veterans' Hospital, Dr. S. W. Shimonek, an Orthopedic Surgeon, on March 23, 1955.

Subsequent to the operation, while Mr. Johnson was receiving post-operative treatment, he began to experience pain in his left wrist of which he complained to Dr. Shimonek. The resection of the palmaris longus and tendon transplant in connection with the operation affected the movement of his left forearm and, in particular, the opposition of his left thumb to his other fingers on that hand.

Dr. Shimonek advised him the operation had not been altogether successful and suggested an additional operation in the nature of a bone block to correct the condition. He further advised the pain was to be expected as a natural consequence of the operation and would continue for a period of time, perhaps become more severe, but would eventually be alleviated. The Plaintiff Johnson declined the type of additional operation suggested by the Veterans' employee doctor and returned to his home in El Dorado, Arkansas, shortly thereafter.

Richard C. Mays, Crumpler, O'Connor, Wynne & Mays, El Dorado, Ark., for plaintiffs.

Ned A. Stewart, Jr., Asst. U. S. Atty., Fort Smith, Ark., for defendant.

## MEMORANDUM OPINION

OREN HARRIS, Chief Judge.

This is a malpractice action brought by the plaintiffs, James C. Johnson and Phyllis Carolyn Johnson, his wife, against the United States of America, under the Federal Tort Claims Act (28 U.S.C. § 2671 et seq.) for damages as a result of alleged negligence in the performance of an operation by an employee of the Veterans' Administration in the Veterans' Administration Hospital in Shreveport, Louisiana.

In 1951 (September) the plaintiff, James C. Johnson, entered the U. S. Navy and continued in active service until his discharge in June, 1954. While

The Plaintiff Johnson continued to experience pain, and in June, 1956, he had an examination of his left arm and wrist at the Veterans' Administration Hospital in Little Rock, Arkansas. The examination at this Veterans' facility was performed by Dr. John M. Hundley, an Orthopedic Surgeon, who was an out patient consultant at the Little Rock VA Hospital.

After a superficial examination, Dr. Hundley concluded that Mr. Johnson had nerve damage to his left wrist, but could not diagnose the extent or nature of his difficulty and recommended that he go to another government facility, the Kennedy VA Hospital in Memphis, Tennessee, for further diagnosis and exploratory treatment. No arrangements were made or undertaken for his admission at Kennedy and thus he failed to follow through on Dr. Hundley's recommendation.

In June, 1960, Mr. Johnson, still experiencing pain and difficulty, contacted a VA representative in El Dorado and inquired into the possibility of obtaining corrective surgery to be performed in El Dorado, Arkansas, as a matter of personal convenience. He was informed that such an operation would necessarily have to be performed in a VA Hospital facility, if it was to be at the expense of the Veterans' Administration.

Mr. Johnson's pain in his left wrist and arm continued and in fact progressed to the point that in 1965, at the suggestion of Dr. Hundley, he submitted to exploratory surgery. The exploratory operation was performed by Dr. Hundley on June 21, 1965, at St. Vincent's Hospital, a private hospital in Little Rock, at his own expense. During the course of the operation Dr. Hundley discovered that the median nerve in Mr. Johnson's left wrist was severed and sutured to the palmaris longus tendon.

This nerve malady, in Dr. Hundley's opinion, was the source of the pain suffered during the years since the operation at the Veterans' Administration Hospital in Shreveport, Louisiana. Dr. Hundley attempted neurophy, or nerve repair, on the severed nerve to correct his trouble. After Plaintiff Johnson recovered from the operation, Dr. Hundley advised him of the nerve malady discovered during the course of the operation and also that the condition could not have come about naturally, but was the result of the earlier surgery improperly performed by Dr. Shimonek at the Shreveport Veterans' Hospital.

Notwithstanding, the nerve repair by Dr. Hundley, Mr. Johnson continued to experience severe pain in his left wrist and arm. In a relatively short time after the operation on June 21, 1965, he obtained admission to the VA Hospital in Little Rock, and on June 28, 1966, with Mr. Johnson's consent the left arm was amputated below the forearm.

Presently he wears a functional or cosmetic prosthetic device, and following a post-operative period of discomfort has suffered no further pain.

The complaint in this case was filed on July 19, 1966. The defendant filed a motion to dismiss contending that the statute of limitations had run and, therefore, is a bar to the action. A full evidentiary hearing was held on the motion to dismiss on February 14, 1967. The matter was taken under advisement and for the attorneys to submit briefs on the issue of the statute of limitations.

From the testimony, exhibits, including depositions, argument of counsel, and excellent briefs on the question, the Court entered an order March 3, 1967, denying the motion to dismiss. The matter was tried on its merits May 5, 1967; after the testimony, exhibits, and stipulation of the parties, the case was again taken under advisement and well prepared briefs have been submitted by both parties.

The plaintiff's contention that his left hand and arm were affected by an attack of poliomyelitis in 1953 while he was a member of the United States Naval Forces is admitted. It is also admitted that the Plaintiff, James C. Johnson, entered the Veterans' Administration Hospital in Shreveport, Louisiana,

after medical discharge from military duty for the purpose of receiving medical care and treatment.

It is stipulated by the parties that on March 23, 1955, he underwent an operation in the Veterans' Administration Hospital in Shreveport, Louisiana, purporting to be a "tendon transplant of the left wrist", which was performed by S. W. Shimonek, M. D., a duly qualified Orthopedic Surgeon of good standing, who was at the time employed by the VA Hospital and possesses that degree of skill, possessed by Orthopedic Surgeons of that locality.[1]

The plaintiff contends that in the performance of the operation the VA doctor, Shimonek, failed to exercise the degree of skill, care and diligence required of him and that he, Shimonek, was negligent in that he "sutured the palmaris longus tendon" to the median nerve of the arm, which was responsible for the pain and suffering during the years and ultimately resulting in the necessity of amputation of the arm just below the elbow.

The government interposes four distinct and specific defenses, as follows:

1. Plaintiffs failed to sustain the burden of proof.

2. Plaintiff, James C. Johnson, is guilty of contributory negligence and failure to mitigate damages as a bar to any recovery.

3. Plaintiffs have not been injured to the extent claimed, and

4. The suit is barred by the statute of limitations.

■ From the testimony in the case it is established beyond any doubt and in fact undisputed that there were no other operations performed on the arm and wrist of Plaintiff Johnson since the original operation on March 23, 1955, until the exploratory operation on June 21, 1965, by Dr. Hundley as a private physician in a private hospital. It is also clear from the testimony that from the original operation of March 23, 1955, the median nerve in his left wrist was sutured to the palmaris longus tendon, which was not discovered by the plaintiff until the exploratory operation on June 21, 1965. Dr. Hundley testified in effect that there was no possibility whatever that the nerve tendon sutured could have occurred except by the act of the doctor who performed the 1955 operation in the VA Hospital at Shreveport.

It is indeed difficult to imagine a more convincing presumption of fact or inference than that Dr. Shimonek sutured the nerve to the tendon in the 1955 operation, and the Court so finds.

■ The defendant argues that the post-operative report of Dr. Shimonek is direct evidence of non-negligence and that the plaintiff must rely upon the doctrine of res ipsa loquitur in order to sustain his burden. The facts are that the admissions, stipulations and plaintiff's evidence thereof, to some extent circumstantial, was sufficient to establish a prima facie case without reliance on the doctrine of res ipsa loquitur. It, therefore, became incumbent upon the defendant to produce evidence sufficient to overcome or rebut such inference, and the self-serving post-operative report is clearly insufficient.

■ It is a well established rule of law that where the plaintiff establishes a prima facie case, it is then incumbent upon the defendant to produce evidence sufficient to overcome such showing in order to prevent a recovery. 70 C.J.S. Physicians and Surgeons § 62; Weintraub v. Rosen, 7 Cir., 93 F.2d 544.

■ Since the alleged act of negligence on the part of the government occurred in Louisiana the rights and liabilities of the parties is governed by the substantive law of Louisiana. 28 U.S.C. § 1346(b); Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); Bartie v. United States, D.C., 216 F.Supp. 10, affirmed 5 Cir., 326 F.2d

1. Dr. Shimonek and the assistant to him in the performance of the operation, are both deceased.

754, cert. den. 379 U.S. 852, 85 S.Ct. 98, 13 L.Ed.2d 55; United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805.

■ Louisiana follows the universal rule that a physician or surgeon must possess and exercise the degree of skill and learning ordinarily possessed and exercised under similar circumstances by reputable members of the profession in the same or similar localities. Mourent v. Sumner, 19 La.App. 346, 139 So. 728 (1932); Whyte v. American Motorists Ins. Co., La.App., 122 So.2d 297, 80 A.L.R.2d 1272 (1960); Fairley v. Douglas, La.App., 76 So.2d 576 (1955).

■ From the record and testimony in this case, the Court is not persuaded that the above standard was met by the government's physician, Dr. Shimonek. It is, therefore, the opinion of the Court that the defendant is liable by virtue of the Federal Tort Claims Act, 28 U.S.C.A. § 2671 et seq., for the damages presently resulting from the negligence of the government's employee doctor in the performance of the operation.

Since the same findings resolve the issues raised by the government in its second and fourth defenses, they will be discussed together; although conclusions are separately determined.

■ In this Court's order denying the motion to dismiss on the grounds that the court lacks jurisdiction in the case, entered on March 3, 1967, the specific question on the statute of limitations was considered. From the testimony of the witnesses, depositions, exhibits, statements, and briefs of counsel, the Court decided that under the facts, the statute of limitations did not commence to run until it was determined from an exploratory operation by Dr. Hundley on June 21, 1965, that the median nerve in the plaintiff's left wrist had been severed and sutured to the palmaris longus tendon. The Court affirms its prior decision.

■ The government contends that the Plaintiff Johnson knew, or reasonably should have known, of his condition as early as in 1956. The facts do not sustain this contention.

Although the operation in 1955 did not result as was expected, the facts do not disclose that there was any intimation or indication of the condition, which caused the pain and suffering and ultimate loss of his left hand and forearm. On the contrary, the doctor performing the operation advised him that the pain would persist for a period of time but would ultimately dissipate. It is contended by the government that Dr. Shimonek, recognizing that the tendon transplant operation had not accomplished the desired results, suggested that he submit to further surgery. However, the facts disclose the suggestion had to do with a "bone block" in order to provide better performance and use of the thumb and other extremities of his hand.

The facts further disclose that the Plaintiff Johnson sought medical and other advice from time to time during the intervening years. It is true that he was advised on one occasion to go to Kennedy Veterans' Hospital in Memphis. However, this was for the purpose of another examination and possible exploration. It is undisputed that he had already sought attention and advice from the Shreveport Hospital, the VA personnel in El Dorado, and the Little Rock VA Hospital. He had received no relief or indication as to the source of his difficulty.

■ Although it appears that the Louisiana Court has not had an occasion to rule on the question directly in point, it is a well established rule that a patient is required to exercise such ordinary prudence as would be expected of a person under similar circumstances. 70 C.J.S. Physicians and Surgeons, § 51. Federal law fixes the date upon which the tort claims' period of limitations begins to run. 28 U.S.C.A. § 2401(b). Therefore, under federal law a malpractice action against the United States may be maintained within two years after the Claimant Johnson discovered, or in the exercise of reasonable diligence should have discovered, the existence of the acts of mal-

practice upon which his claim is based. Quinton v. United States, 5 Cir., 304 F. 2d 234; Beech v. United States, 5 Cir., 345 F.2d 872, 874.

 Under the facts of this case, whether the plaintiff violated his duty of care sufficiently to constitute contributory negligence, or whether in the exercise of reasonable diligence, the plaintiff should have discovered the existence of the acts of malpractice which commenced the running of the statute of limitations are essentially the same questions.

As already pointed out, the evidence shows that Dr. Shimonek gave the Plaintiff Johnson no indication that there was any reason to believe that his difficulties had resulted from a negligently performed operation. The plaintiff was discharged by him from the hospital reasonably believing that his pain was a natural result of a normal operation.

Mr. Johnson still experiencing severe pain made an effort in 1956 to correct his difficulty by submitting to an examination by Dr. Hundley, a consultant at the VA Hospital in Little Rock, Arkansas. Dr. Hundley testified when asked whether he told Mr. Johnson anything other than to suggest that he go to Kennedy VA Hospital in Memphis, to-wit:

"A: No, sir. I had not looked into his wrist before that. I just felt that there was something wrong and that he should have it operated on *or explored*. [Emphases supplied]

"Q: Well did you tell Mr. Johnson that there was something wrong?

"A: No. I just recommended that he go to the hospital, as I recall.

"Q: And that was all?

"A: Yes, sir. And I recall why I recommended that he go to Kennedy —because they have a fine orthopedic training program there and some of the leading orthopedists in the South are at the Kennedy Hospital."

Again, this Court cannot see Plaintiff Johnson, in failing to avail himself of further treatment, violated the standard of ordinary care incumbent upon him or gave him any reason to suspect that his malady was the result from the negligent operation. As a layman with his previous disastrous experience during hospitalization it was equally as reasonable for him to fear further treatment. The Court, therefore, finds that this action was commenced within the period of the statute of limitations and that Plaintiff Johnson was not guilty of contributory negligence or of failure to mitigate his damages.

Finally, as to the damages claimed by the plaintiffs. As already stated, Mr. Johnson was stricken with polio while in active military service, which resulted in substantial impairment to his left hand and arm, as well as other portions of his body. He was medically discharged and subsequently awarded permanent and total service-connected disability. From this award he has received from the government through the Veterans' Administration over $56,000 in disability benefits and will continue to receive such payments in the future until and unless his service-connected disability ceases to exist.

 Since Mr. Johnson had virtually lost the use of his left arm and hand as a result of his polio attack prior to the negligent operation at the Shreveport VA Hospital in 1953, the Court concludes that the evidence is insufficient to establish the plaintiff's contention for loss of past earnings and future earning capacity, and the Court so finds.

 The government claims that credit should be allowed for the sums paid by the Veterans' Administration should an award be made to Mr. Johnson in these proceedings. The Court is of the opinion that such credit should be allowed to offset any award for loss of earnings and earning capacity, which, as already determined, has not been established, and the Court so holds. Tessier v. United States, D.C., 164 F.Supp. 779, aff'd 1 Cir., 269 F.2d 305.

■ It is also the opinion of the Court that the Plaintiff Johnson is not entitled to medical expenses, since it was established by the testimony that such services were available and could have been performed at government expense, and the Court so holds.

■ Neither was the evidence sufficient in the opinion of the Court to establish the claim of Plaintiff Phyllis Carolyn Johnson for loss of consortium.

As to the elements of damages for pain, suffering, mental anguish and disfigurement, the plaintiff's testimony was substantial. As the government's witness, Dr. Hundley, when asked if such an operation as was performed on Mr. Johnson would be calculated or expected to cause pain, stated: "I would say it would be about the most excruciating pain a human could endure."

Mr. Johnson testified that he suffered long periods of intense pain and other periods of less intensity. The testimony established the fact the pain never entirely subsided from the date of the negligent operation to the date of the eventual amputation; a period well over ten years. This was undisputed.

■ Damages for pain, suffering and mental anguish are allowable under the law of Louisiana. Frye v. Joe Gold Pipe & Supply Co., La.App.1951, 50 So. 2d 38; Bonner v. Ouachita Baking Co., La.App.1948, 37 So.2d 543; 25 Tulane Law Review 516 (1950).

■ There is no set standard for the admeasurement of damages for pain and suffering and neither can there be any fixed measure of compensation. Such determination must of necessity depend upon good sense and deliberate judgment consistent with the evidence, and the record as to what is just and fair. National Bulk Carriers, Inc. v. Hall, 5 Cir., 152 F. 2d 658; Imperial Oil v. Drlik, 6 Cir., 234 F.2d 4–10; The City of Panama v. Phelps, 101 U.S. 453, 25 L.Ed. 1061.

■ The Court is of the opinion from the record in this case, the testimony, exhibits and briefs of counsel, that an award of damages for pain, suffering, mental anguish and disfigurement, should be made to the Plaintiff James C. Johnson in the sum of $20,500.00. This appears to be reasonable and consistent with the evidence. Imperial Oil v. Drlik, supra.

A judgment will be entered in accordance with this opinion.