Harvey **HACKWORTH** and Carroll Hackworth, Appellants,

v.

Ernest **HART** and Robert Jackson, Appellees.

Court of Appeals of Kentucky.

Dec. 17, 1971.

Russell S. Armstrong, Evansville, Ind., George B. Baker, Jr., Rhoads & Baker, Henderson, for appellants.

Morton Holbrook, Sandidge, Holbrook, Craig & Hager, Owensboro, William E. Quisenberry, Calhoune, for appellees.

EDWARD P. HILL, Judge.

The appeal is from a judgment entered pursuant to a directed verdict for the appellees on the trial of appellants' action for damages based upon an allegation that a vasectomy operation performed by appel-

lee Dr. Ernest Hart on the appellant Harvey Hackworth was unsuccessful. The appellants relied both upon a contract and negligence.

The judgment does not state the grounds upon which the trial court directed the verdict for the appellees, but in the appellants' brief it is said that the trial court based its decision upon the failure of the appellants to prove negligence.

The appellants argue on this appeal that (1) the evidence on the question of negligence was sufficient to take the case to the jury both as to the defendant Hart and the defendant Jackson; (2) the evidence on the breach of warranty was sufficient to require the submission of the case to the jury; (3) the evidence was sufficient on the question of damages to justify a jury issue; and (4) the action was not barred by the Statute of Limitations.

The operation in question was performed by the appellee Dr. Hart on November 17, 1961. Shortly thereafter, and just prior to January 15, 1962, the appellee Robert Jackson, a medical technician at McLean County Hospital, at the request of Dr. Hart did a sperm-count test on the semen of appellant Harvey Hackworth and reported his findings to Dr. Hart. On or about January 15, 1962, Dr. Hart informed the appellant Harvey Hackworth of the results of the test and assured the latter that he no longer needed to use contraceptives when having sexual intercourse. In late March 1962, Dr. Hart again assured Mr. Hackworth that he was sterile but was told by Mr. Hackworth that his wife was pregnant. Mrs. Hackworth gave birth to her fifth child on October 11, 1962. This suit was filed March 11, 1963.

■ At the time this case was tried, and prior to the filing of the briefs herein, the case law of this state held that the Statute of Limitations under KRS 413.140(1) (e) commenced to run on the date of the operation or injury complained of. Our cases so holding were overruled however in June

1970 in Tomlinson v. Siehl, Ky., 459 S.W. 2d 166, in which this court held that the limitation period governing such causes of action commences to run upon the discovery of the injury. It may be appropriate here and now to say that there should have been added to the rule in Tomlinson a further statement that the statute begins to run on the date of the discovery of the injury, *or from the date it should, in the exercise of ordinary care and diligence, have been discovered.*

■ Appellants' cause of action commenced to run at the time he discovered or should have discovered that the operation was not successful. Such discovery will usually be made when it is discovered that he is not sterile and that his wife is pregnant by him.

The question of when a woman discovers or should in the exercise of usual care and curiosity have discovered her pregnancy is a difficult one. The theory has been advanced that in many cases pregnancy is not detected until late in the gestation period, and therefore the best rule is to say that the statutory period begins to run from the date of delivery of the child. However, it is not the function of the court to choose a method of extending the statutory period of limitation when it can just as logically choose one that does not do so. We think that with modern technology a great majority of women will have little difficulty discovering pregnancy. The doctor, facing a malpractice case, is entitled to demand due diligence on the part of the person claiming to have been aggrieved. Accordingly, we adopt the rule that the cause of action in malpractice cases, where pregnancy is the critical question, commences to run from the time pregnancy was or should have been discovered.

■ The evidence is not clear as to when the appellants first discovered the pregnancy of Mrs. Hackworth. If the appellants knew or should have known of the pregnancy at the January 15, 1962, meeting with Dr. Hart, their suit filed more than twelve

months thereafter is barred by the Statute of Limitations. If it was during the "last week" in March or April, the suit was filed within the one-year period and was not barred.

■ The question of limitation being a matter of defense, the duty of appellees to offer evidence on this question was relieved by the action of the trial court in directing a verdict for the appellees at the close of appellants' case. The evidence thus far produced does not show that the cause of action was barred.

The evidence on another trial may well present a factual issue requiring submission to the jury.

The appellants argue that the continued insistence of Dr. Hart that Mrs. Hackworth could not be pregnant and his assurance prior to the operation that the operation was 100 percent sure to produce infertility tolled the Statute of Limitations. They cite Adams v. Ison, Ky., 249 S.W.2d 791. We do not find Adams, supra, to be factually parallel to the case at bar. In Adams the surgeon inserted a six-inch rubber tube in the patient's lung and failed to remove it. Sometime thereafter, the patient discovered the tube and reported his discovery to the doctor who dismissed the matter with the assurance that the tube would be dissolved by bodily processes. After twenty years the body had not dissolved the rubber tube. The court held that the doctor's assurance tolled the Statute of Limitations. Adams is not in point.

■■ Ordinarily, unless the conduct of the defendant amounts to an absconding or concealment or obstructs the prosecution of the action it will not toll the running of the Statute of Limitations. See 41 A.L.R.2d 402, Linke v. Sorenson, 8 Cir., 276 F.2d 151, and 80 A.L.R. 407.

■ Appellants argue that they not only alleged negligence but also alleged a breach of contract, express or implied, and that they proved a contract and therefore, they say, the five-year Statute of Limitation applies under KRS 413.120(1). We cannot accept this argument. KRS 413.140(1) (e) fixes the limitation within which an action against a "physician or surgeon" shall be commenced for "negligence or malpractice." By the use of "negligence or malpractice," the legislature obviously intended for "malpractice" to mean something other than "negligence." It did not intend that the two words should be synonymous. As we interpret the statute, it governs all causes of action against physicians and surgeons regardless of whether the claim be alleged in tort or in contract. Jones v. Furnell, Ky., 406 S.W.2d 154. (1966).

We come next to appellants' argument that the evidence was sufficient to require submission of the case to the jury and therefore the trial court erred in directing a verdict for the appellees. This calls for a look at the evidence.

Appellant Harvey Hackworth testified that Dr. Hart assured him prior to the operation that the operation was a "sure thing," "fool-proof thing, 100%," and that he would "run tests to check that out"; that after the operation and after tests were made, Dr. Hart advised him that "everything is OK you are clear, go ahead."

Appellants presented an expert medical witness to the effect that the operation if performed properly[1] would, in his own experience be "100%, but anything is possible." He also testified that one post-operative test was substandard; that giving of at least three tests was standard practice. This is substantially all the evidence offered on the question. Was it sufficient to make a jury issue?

First let us repeat that so far as the question of limitation is concerned it makes no difference whether the allegations and proof sound in tort or in contract.

■ In a discussion of the standard of care of physicians and surgeons found in

---

1. By removing a section of the cord and tying off the two ends thereof.

Prosser's Law of Torts, 4th ed., § 32, it is written at page 165:

> "The cumulative effect of all of these rules has meant that the standard of conduct becomes one of 'good medical practice,' which is to say, what is customary and usual in the profession."

We quote further from Prosser at page 162:

> "A physician may, although he seldom does, contract to cure his patient, or to accomplish a particular result, in which case he may be liable for breach of contract when he does not succeed. *In the absence of such an express agreement, he does not warrant or insure the outcome of his treatment, and he will not be liable for an honest mistake of judgment, where the proper course is open to reasonable doubt."* (Emphasis ours)

The binding is giving away and the pages are fading with age but in Reynolds v. Graves, Wisconsin Reports, Dixon's Notes, Volume III, 371, at page 376 in discussing an "absolute undertaking and promise on the part of the defendant to cure the plaintiff," the court said:

> "Such certainly is not the undertaking which the law implies in such cases; but only that reasonable skill, judgment and diligence shall be bestowed, for the accomplishment of the end in view."

By quoting the above, we do not mean to hold that under no circumstances will an express contract to accomplish a particular result ever be enforced. It depends on the evidence and facts of the particular case.

Let us now review the appellants' evidence in the light of these pronouncements to determine the propriety of the trial court's action in directing a verdict for the appellee physician.

The assurance by appellee Dr. Hart that the operation was a "fool-proof thing, 100%" was the expression of a professional opinion as to the effectiveness of the operation (vasectomy) to accomplish sterility.

The evidence shows that only one semen test was made for appellant Harvey Hackworth. Appellants' apparently highly qualified specialist testified that giving three tests of the semen is standard and accepted practice and that three such tests were necessary to determine the success or failure of the operation.

We think this evidence presented a jury question and that the trial court erred in directing a verdict for the appellee.

The judgment is reversed.

MIILLIKEN, C. J., and OSBORNE, REED, STEINFELD and NEIKIRK, JJ., concur.