**Sharlene HALL and Ray Hall,
Plaintiffs-Appellants,**

v.

**Dr. Ernest E. MUSGRAVE and Dr.
Charles F. Sowards,
Defendants-Appellees.**

No. 74–1778.

United States Court of Appeals,
Sixth Circuit.

June 2, 1975.

**1164**

James S. Greene, Jr., Greene & Forester, Harlan, Ky., Don R. Pippin, Norton, Va., T. Munford Boyd, Charlottesville, Va., for plaintiffs-appellants.

Robert J. Greene, G. C. Perry, III, J. Michael Noyes, Robert Greene, Paintsville, Ky., William J. Baird, III, Baird & Baird, Ronald W. May, Pikeville, Ky., for defendants-appellees.

Before CELEBREZZE, PECK and ENGEL, Circuit Judges.

JOHN W. PECK, Circuit Judge:

■ This diversity case concerns the date on which a medical malpractice action "accrued" under Kentucky law. The pertinent statute of limitations, K.R.S. § 413.140(1)(e), provides that an action for negligence or malpractice against a physician must be commenced within one year after the cause of action accrued. As the operative facts were not in dispute, the district court correctly determined that the statute of limitations question presented was one for the court to decide as a matter of law. *Lynn Mining Co. v. Kelly*, 394 S.W.2d 755 (Ky.1965); *Slack v. Bryan*, 299 Ky. 132, 184 S.W.2d 873 (1945).

Plaintiff-appellant Sharlene Hall gave birth to her first child on March 19, 1969. The breech birth delivery came after protracted labor, appellant having entered the hospital on March 15th, and commenced active labor sometime during the evening on March 18th. Dr. Ernest E. Musgrave, defendant-appellee herein, the attending physician during the prenatal period and through much of labor, did not deliver the baby as planned. Dr. Musgrave was at his home when he received word from the hospital, in the early morning hours of March 19th, that appellant was ready for delivery. By the time he arrived at the hospital, Dr. Charles F. Sowards, also a defendant-appellee, the physician on duty at that time, was in the process of delivering the baby. Dr. Musgrave observed but did not assist Dr. Sowards. Mother and child progressed satisfactorily and were discharged two days later.

Approximately ten days thereafter, appellant discovered that she was unable to hold her water and that urine was leaking from her vagina. On May 3, 1969, she went to see Dr. Musgrave, but he was unable to determine the cause of the leakage and referred her to a surgeon colleague, Dr. Nash. Dr. Musgrave told appellant that her problem "was due to a birth related phenomenon." Dr. Nash, similarly indefinitive as to the origin of appellant's difficulty, suggested that she consult a urologist and gave her a note to take with her which read, "To GU [urology] Department. Please see this girl for urethral sphincter problems as a result of child birth."

Appellant was seen by Dr. Welling, a urologist, on May 5, 1969, and she remained under his care until August 1969. Dr. Welling's initial examination revealed a 1½ centimeter hole near the neck of the urethral bladder down into the vagina. Although it is unclear as to whether he explained the specific origin of the condition to appellant, Dr. Welling did tell her that it was not uncommon for this condition to develop following the birth of a woman's first child. When, on direct examination as a defense witness, Dr. Welling was asked if he thought that appellant was aware of the origin of her problem, he replied,

"A. Just from her initial history, she stated that she had a 'traumatic child birth' the quote being mine, and that she had stitches and could not empty her bladder and then by forcing and straining some 'X' number of hours later was able to empty her bladder and it leaked continuously, since that time. I would assume through associ-

ation with her that the patient had had such a labor and repair and then a leakage following that. I think anybody with normal intelligence would assume that something happened, during the delivery, to have caused such a thing."

On cross-examination, appellants' counsel pursued this topic further.

"Q. As I understand your answer to the last question, doctor, you'd assume that she understood that her condition of which she was complaining was in some way connected with the delivery of her child?

"A. Yes, sir."

Dr. Welling inserted a catheter in appellant's bladder to divert the leakage and to give the affected area an opportunity to regenerate to where plastic repair could be undertaken, a period of some three months. When this point in her treatment was reached, Dr. Welling advised her that she was ready for surgery and that the surgery would cost $250.00. Unable to raise that amount, and being of the belief that Dr. Welling would not proceed unless prepaid for his services, appellant elected to postpone corrective surgery. She did not see a doctor or receive any medical attention during the period from August 1969 to April 1970. She testified that the urine leakage continued unabated during this period, causing severe discomfort and interfering with her function as a wife and mother.

On April 20, 1970, approximately eight months after her last visit to Dr. Welling, appellant went to see Dr. Ronald N. Shelley, a surgeon, for the needed surgical repair. In relating the history of her complaint to Dr. Shelley, appellant made mention of the fact that she had had a difficult breech delivery. Dr. Shelley asked her if a Caesarean section operation had been considered, to which she replied in the affirmative. The plastic repair of the ruptured urethra was commenced in May 1970, progressed in

stages, and was finally completed in April 1971. Appellant effected a complete recovery.

A complaint was filed against Dr. Musgrave on February 15, 1971, and amended to include Dr. Sowards on April 15, 1971. Prior to the trial, the district court twice overruled motions to dismiss the complaint on the grounds that the action was barred by the one year Kentucky Statute of Limitations. When the cause came on for trial, appellees asked the court to reconsider its prior rulings on their motions to dismiss. On reconsideration, the motion was sustained but the ruling withheld pending completion of the trial on the merits.*

The district judge orally advised counsel of his reasons for applying the statute of limitations in this case.

"Assuming the view most favorable to the plaintiff . . . I want to show you what this record reveals, gentlemen. It reveals that the plaintiff's baby was born March 19, 1969. Now, this is from the plaintiff's own testimony. It reveals that she went back to the doctor's office on May the 2nd, 1969, and that ignores subsequent testimony that she went back three weeks later. It shows that she went to Dr. Welling on May 5, 1969 . . . Dr. Welling told her that she had a hole in the tube to her bladder. Gentlemen, as far as I can see from the expert testimony, that is the injury. She stopped seeing Dr. Welling sometime in August of 1969 on the occasion that he advised apparent surgery because the reason she stopped seeing him was, by her testimony, that she could not raise the two hundred fifty dollars ($250.00) necessary.

* * * * * *

" . . . [T]his plaintiff was aware, by her own testimony, of her medical condition, that there was a hole in the urethra, or whatever you gentlemen call it. If that becomes the

---

* The district judge explained, "[I]f I am wrong, then I do not want plaintiff to have to sit on the docket for another three or four years trying to get another trial date."

# 1166

measuring stone, then the action would have had to be filed within one year from May the 6th of 1969. This action was filed, gentlemen, on February 25, 1971."

Following an extended colloquy between the district judge and counsel, the ruling at issue herein was made.

"Alright, gentlemen, I am going to rule that the Statute of Limitations is effective in this case, I am going to find that the plaintiff was specifically advised of her need for surgery and that she was specifically advised of the nature of her injury at a date not later than May 6th, 1969, when she last visited Dr. Welling."

The trial continued, and the jury returned a verdict in favor of appellants for $150,000. Thereafter, the district court dismissed appellants' complaint ordering that they take nothing. Appellees' motions for judgment notwithstanding the verdict or for a new trial were held in abeyance pending the outcome of this appeal.

■ Examination of Kentucky law on this statute of limitations question leads, as the district court found, to the cases of *Tomlinson v. Siehl*, 459 S.W.2d 166 (Ky.1970), and *Hackworth v. Hart*, 474 S.W.2d 377 (Ky.1971). Prior to 1970, the rule in Kentucky was that a medical malpractice action accrued on the date of the complained of treatment or diagnosis. *Guess v. Linton*, 236 Ky. 87, 32 S.W.2d 718 (1930); *Philpot v. Stacy*, 371 S.W.2d 11 (Ky.1963); *Jones v. Furnell*, 406 S.W.2d 154 (Ky.1966). *Tomlinson v. Siehl, supra*, brought Kentucky in line with an increasing number of jurisdictions holding that a cause of action accrues upon the discovery of the injury. *See* Prosser, Law of Torts, § 30, pp. 144–145 (4th ed. 1971).

In *Tomlinson*, a sterilization operation was performed on Lilly Tomlinson on September 24, 1966. She became pregnant on November 23, 1967, but did not discover this fact until February 25, 1968. A child was born from the pregnancy on August 16, 1968. On November, 1, 1968, a malpractice action was filed against the doctor who performed the operation by Mrs. Tomlinson and her husband. Although the trial judge expressed serious reservations as to the correctness of the prevailing rule, the action was dismissed as untimely filed. The Court of Appeals of Kentucky reversed on the grounds that the "discovery of the injury" rule was the more fair of the two and was less likely to produce injustice in the future.

While *Tomlinson* did not deal specifically with the manner of discovery, the Court of Appeals noted the position taken by other jurisdictions in this regard. For example, the *Tomlinson* opinion contains the following language from the Delaware case of *Layton v. Allen*, 246 A.2d 794, 798 (1968):

"Upon the basis of reason and justice, we hold that when an inherently unknowable injury, such as is here involved [failure to remove a metallic hemostat following surgery], has been suffered by one blamelessly ignorant of the act or omission and injury complained of, and the harmful effect thereof develops gradually over a period of time, *the injury is 'sustained'* * * * *when the harmful effect first manifests itself and becomes physically ascertainable*." (Emphasis supplied.)

A similar idea was manifest in a paragraph taken from a Pennsylvania decision.

"In this case Ayers became injured when the healthful forces within his body fell over the sponge negligently left by Dr. Morgan on the highway of anatomical normality. Dr. Morgan's actionable negligence stemmed from his failure to timely remove the sponge. This failure constituted a blameworthiness which continued until such time as Ayers learned, or, by the exercise of reasonable diligence, could have learned of the presence of the foreign substance within his body." *Ayers v. Morgan*, 397 Pa. 282, 154 A.2d 788, 793 (1959).

And finally, there appears the following passage from *Hundley v. St. Francis Hospital,* 161 Cal.App.2d 800, 806, 327 P.2d 131, 135 (1958):

> "The rule is clear, as to malpractice actions, that 'while the physician-patient relation continues the plaintiff is not ordinarily put on notice of the negligent conduct of the physician upon whose skill, judgment and advice he continues to rely.' (Citation omitted.) Thus, in the absence of actual discovery of the negligence, the statute does not commence to run during such period . . . and this is true even though the condition itself is known to the plaintiff, so long as its negligent cause and its deleterious effect is not discovered . . .."

In *Tomlinson,* as well as in *Layton* and *Ayers,* the injury was not discoverable due to the complete absence of physical manifestations. Mrs. Tomlinson had no reason to suspect that the sterilization procedure was faulty until she learned that she was pregnant. Likewise, in *Layton* and *Ayers,* the plaintiffs' injuries lay buried and unseen in their bodies until the foreign objects were removed. The *Hundley* decision deals with a related problem. As is evident in the passage quoted, the court there was concerned that the continuation of the physician-patient relationship, in which the patient must rely upon the knowledge and skill of the physician, serves to mask the injury.

■ The case before us does not involve a hidden physical condition. Appellant herein, according to her own testimony, knew no later than May 5, 1969, that she had a hole in her urethra that needed surgical repair and that this condition was probably a result of childbirth. Answers elicited from other witnesses serve to buttress this conclusion. Further, there existed no physician-patient relationship between appellant and Drs. Musgrave and Sowards after May 5, 1969.

Eighteen months after the *Tomlinson* decision was handed down, the Court of Appeals found it necessary to restate the discovery rule.

> "It may be appropriate here and now to say that there should have been added to the rule in Tomlinson a further statement that the statute begins to run on the date of the discovery of the injury, *or from the date it should, in the exercise of ordinary care and diligence, have been discovered.*" *Hackworth v. Hart,* 474 S.W.2d 377, 379 (1971). (Emphasis in original.)

Although the additional language probably did not, in our opinion, alter the newly adopted rule (*see* Prosser, Law of Torts, § 30, p. 144 (4th ed. 1971) as to the usual language employed), the facts of the case merit comment.

*Hackworth v. Hart* involved a vasectomy operation performed on Mr. Hackworth on November 17, 1961. On October 11, 1962, his wife gave birth to a child. On March 11, 1963, suit was filed by the Hackworths against the physician who performed the operation. The Court of Appeals held that the "cause of action commenced to run at the time he [the husband] discovered or should have discovered that the operation was not successful." *Hackworth, supra* at 379. And, as the court explained, "Such discovery will usually be made when it is discovered that he is not sterile and that his wife is pregnant by him." *Id.*

■ *Hackworth v. Hart,* like *Tomlinson v. Siehl,* involved an injury that was "inherently unknowable" and not manifest until the wife became aware that she was pregnant. In this sense, these cases closely resemble the classic sponge left in the incision situation encountered in the *Layton* and *Ayers* cases.

In light of the above, we think it clear that the Court of Appeals of Kentucky intended the discovery rule to extend the commencement of the statute of limitations only up to the time that the harmful effect of the complained of negligence first manifests itself. In the case at bar, appellant became aware of the harmful effects of the alleged negligence within two weeks after delivery and was

advised of the specific problem and the required surgical repair at the very latest on May 5, 1969, some 21 months before the filing of the initial complaint. As we read Kentucky law, this suit was barred by the one year statute of limitations.

The judgment of the district court is affirmed.

CELEBREZZE, Circuit Judge (dissenting).

The majority allows Appellees to escape liability for injuries sustained by Appellant Sharlene Hall.[1] Instead of performing a Caesarian section in delivering her first child in April 1969, Appellees delivered the baby by a breech birth causing a hole to develop in Mrs. Hall's bladder. Soon after the delivery, Mrs. Hall was unable to "hold her water," and urine uncontrollably leaked from her body. She suffered severe pain and distress for over a year, when corrective surgery was performed by another doctor. She was not told by either Appellee that their negligence might have caused her problem, though they continued to treat her. Rather, Appellee Musgrave remarked; "Maybe it's because you had so many stitches," and referred her to another doctor. The second doctor referred her to a third, who informed her that "it wasn't uncommon for her to get where she couldn't make water or hold her water" following childbirth. In May 1969 this third doctor informed her that she had a hole in her bladder and that corrective surgery was required. He did not suggest that the problem might have been caused by Appellees' negligence. As far as she knew or should have known, she had suffered an unfortunate but natural injury.

In April 1970, she visited a fourth physician, Dr. Shelley. From him she discovered for the first time that her difficulty was related to Appellees' negligent handling of the delivery a year earlier. This action was filed within a year of the discovery.

The majority affirms the District Court's ruling that Appellants may recover nothing from Appellees for the damages inflicted by their malpractice. It does so on the basis that Kentucky law bars malpractice actions filed more than a year after "the harmful effect of the complained of negligence first manifests itself." Since Mrs. Hall knew of her difficulty in May 1969, her February 1971 action was filed too late.

Were this a correct expression of Kentucky law, I would apply it, under *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). No Kentucky court has announced such a rule, however, and I believe none would do so. Kentucky law is that a plaintiff has one year to file a malpractice action from the time she discovers or in the exercise of reasonable diligence should have discovered that a defendant injured her. This rule entails knowledge that she has a basis for a claim before the statute of limitations begins to run. Since Mrs. Hall did not know and had no reason to know that her problem was the result of Appellees' negligence until informed of this in April 1970, her action was timely filed.

The difference between the majority and myself rests on the distinction between "discovery of harm" and "discovery of injury."[2] A classic "sponge" case serves to illuminate this distinction.

1. In reviewing the grant of summary judgment, we must construe the facts liberally in favor of Appellants. *L'Orange v. Medical Protective Co.*, 394 F.2d 57, 59 (6th Cir. 1968).

2. The Restatement (Second) of Torts § 7, Comment (1965), carefully distinguishes between "harm" and "injury". "Harm" is defined as "the existence of loss or detriment in fact of any kind to a person resulting from any cause." Thus, harm in a malpractice context consists of the loss of health or other physical state which might be expected to follow medical treatment.

"Injury," on the other hand, is defined as "the invasion of any legally protected interest of another." Injury in a malpractice context connotes the actual wrong done to a patient, the act of malpractice itself.

In *Ayers v. Morgan*, 397 Pa. 282, 154 A.2d 788 (1959), the defendants negligently left a sponge in the plaintiff's abdomen during a 1948 operation. He was aware of the "harm" from this negligence in 1948, as he felt abdominal pain immediately after the operation and for nine years thereafter. He did not discover the cause of the pain until 1957, when surgery revealed the sponge. Only then did he discover that he had been "injured" during the 1948 operation.

The *Ayers* Court held that his malpractice claim was not barred by Pennsylvania's two-year statute of limitations. His cause of action accrued not in 1948, when he discovered the "harmful effect" of the malpractice, but in 1957, when he discovered the fact of "injury." As the *Ayers* Court states,

> [T]o hold that the statute begins to run at the date of the [original operation] is in most cases to take away the remedy of the injured party before he can show that an injury has been done him. A result so absurd and so unjust ought not to be possible.
>
> .    .    .    .    .
>
> The statute will run against a claim for compensation from the time the existence of the claim was, or might have been known to the plaintiff
>
> .    .    .[3]

The majority cites no support for its holding that the Kentucky Court of Appeals would not follow the *Ayers* reasoning but would instead adopt a "discovery of the harm" rule. In fact, Kentucky's supreme tribunal relied on *Ayers* when it adopted a "discovery of *injury*" rule in 1970.

"Harm" could result from a successful operation. This would be true where a communicated, calculated risk simply turns out poorly for the patient, although the medical treatment met the highest medical standards. There would be no "injury" in this case, despite the existence of "harm."

The majority is wrong to equate "harmful effects" with "injury." It is the date of actual or constructive discovery of *injury*—of the invasion of a legally protected interest, *i.e.*, of a cause of action—that begins the running of the statute of limitations in a jurisdiction

Before 1970 the Kentucky courts had construed the malpractice statute of limitations as barring actions brought more than one year after the date of the medical mistreatment. *See Jones v. Furnell*, 406 S.W.2d 154 (Ky.1966); *Guess v. Linton*, 236 Ky. 89, 32 S.W.2d 719 (1930). The Kentucky statute reads simply that "an action against a physician or surgeon for negligence or malpractice" must be brought "within one (1) year after the cause of action accrued."

In *Tomlinson v. Siehl*, 459 S.W.2d 166 (Ky.1970), the Kentucky Court of Appeals reversed its construction of the statute, stating:

> Appellants frankly admit that the foregoing cases represent the law up to now, but they earnestly insist that these cases should be overruled and that the statute of limitations should not begin to run *until the discovery of the cause of action..* (Emphasis added.)
>
> We are inclined to agree.[4]

Phrasing its holding another way the court held, "[t]he cause of action does not accrue under the statute until the discovery of the injury."[5]

The new Kentucky rule was refined a year later in *Hackworth v. Hart*, 474 S.W.2d 377 (Ky.1971). There the Kentucky Court of Appeals stated its rule in two similar ways:

> [T]he statute begins to run on the date of discovery of the injury, or *from the date it should, in the exercise of ordinary care and diligence, have been discovered.* (emphasis in original)

which has adopted the "discovery of injury" rule, as Kentucky has.

3.  154 A.2d at 791, *quoting Lewey v. H. C. Frick Coke Co.*, 166 Pa. 536, 548, 31 A. 261, 263 (1895). For other Pennsylvania decisions holding that the crucial time is the discovery that a patient "has a claim," *see infra* n. 28.

4.  459 S.W.2d at 167.

5.  459 S.W.2d at 168.

Appellants' cause of action commenced to run at the time he discovered or should have discovered that the operation was not successful.[6]

Nowhere does *Tomlinson, Hackworth,* or any other post-1970 Kentucky opinion refer to "discovery of the harmful effect" as the time which starts the one-year limitations period running. Every formulation of the Kentucky rule in *Tomlinson* and *Hackworth*—"discovery of the cause of action," "discovery of the injury," constructive "discovery of the injury," and actual or constructive discovery "that the operation was not successful" embodies the concern that the plaintiff be aware or have a reasonable basis for recognizing that he has a cause of action before the statute of limitations begins to run.

Indeed, every "discovery" jurisdiction which has had occasion to consider the "harm"—"injury" distinction has concluded that the majority's test is wrong.

All three opinions quoted by the *Tomlinson* Court reject the majority's test. One of the three is *Ayers*. *Layton v. Allen,* 246 A.2d 794 (Del.1968), also requires that a plaintiff have actual or constructive knowledge of the fact of *injury*. As the *Layton* Court stated:

"Where choice must be made between the defendants' problems of lost evidence, faded memories, and missing witnesses, on the one hand, and a deprivation to the plaintiff of any and all remedy for the wrong done her, on the other, the law must be construed in favor of the blamelessly ignorant plaintiff and against the interests and convenience of the wrongdoer.[7]

The third opinion relied on by the *Tomlinson* Court is *Hundley v. St. Francis Hospital,* 161 Cal.App.2d 800, 327 P.2d 131 (1958). There a California appellate court required knowledge of both the "negligent cause and its deleterious effect"[8] to begin the running of the limitations period before the physician-patient relationship ended.[9]

The *Tomlinson* Court sought to join the reasoning in these opinions, not to reject it. Furthermore, it noted the "mass exodus" from its former rule and joined the jurisdictions adopting the "discovery of injury" test.

A survey of the law in the "discovery" jurisdictions *Tomlinson* sought to follow reveals not a single decision in favor of a "harmful effect" test.

The formulation of the Michigan Supreme Court in *Johnson v. Caldwell,* 371 Mich. 368, 379, 123 N.W.2d 785, 791 (1963), could not be more clear that it is the actual or constructive discovery of the physician's malpractice, not the recognition of "harmful effect," which begins the limitations period:

Simply and clearly stated the discovery rule is: The limitation statute or statutes in malpractice cases do not start to run until the date of discovery, or the date when, by the exercise of reasonable care, plaintiff should have discovered the wrongful act.

This formulation has been adopted verbatim in Kansas and Iowa. *Hecht v.*

---

6. 474 S.W.2d 379.

7. 246 A.2d at 79, *quoted in Tomlinson,* 459 S.W.2d at 167. This statement in *Layton* makes clear that the Delaware Supreme Court would not deprive a plaintiff of a malpractice claim before she had reason to know of its existence. In *Layton* the recognition that the basis for a claim existed coincided with the recognition of the "harmful effect"—when the foreign object was removed from the patient's body.

8. 327 P.2d at 135.

9. In *Hundley* the plaintiff knew the "harm" done to her (unconsented-to removal of certain organs) well before she discovered that she had been the victim of malpractice (when she learned that the organs had been removed *unnecessarily*). The statute began to run at the later time, not upon the discovery of the harmful effect. For other California precedent *see infra* n. 25.

*First National Bank & Trust Co.*, 208 Kan. 84, 490 P.2d 649, 657 (1971); *Chrischilles v. Griswold*, 260 Iowa 453, 150 N.W.2d 94 (1967).[10]

States phrasing their rule in terms of actual or constructive discovery of "the wrongful act," "the defendant's negligence," "the defendant's conduct," or "the act of malpractice" are Florida,[11] Texas,[12] Arizona,[13] Colorado,[14] Idaho,[15] Illinois,[16] Washington, [17] Nebraska,[18] Rhode Island,[19] North Dakota,[20] Hawaii,[21] Louisiana,[22] Oklahoma,[23] North Carolina,[24] and California.[25]

**10.** *Chrischilles* applies the discovery rule to the professional malpractice of an architect. The rule was applied in the medical context in *Flynn v. Lucas County Memorial Hospital*, 203 N.W.2d 613 (Iowa 1973).

**11.** *Edwards v. Ford*, 279 So.2d 851 (Fla.1973) (when "act of negligence became known" in legal malpractice context). *See also City of Miami v. Brooks*, 70 So.2d 306, 309 (Fla.1954) (in medical context "the statute attaches when there has been notice of an invasion of the legal right of the plaintiff or he has been put on notice of his right to a cause of action.").

**12.** *Hays v. Hall*, 488 S.W.2d 412 (Tex.1972) (upon "discovery of the true facts concerning the failure of the operation," adopting *Hackworth*). *See also Gaddis v. Smith*, 417 S.W.2d 577 (Tex.1967).

**13.** *Mayer v. Good Samaritan Hospital*, 14 Ariz. App. 248, 252, 482 P.2d 497, 501 (1971) ("when the plaintiff knew or by the exercise of reasonable diligence should have known of the defendants' conduct."). *See also Abernethy v. Smith*, 17 Ariz.App. 363, 367, 498 P.2d 175 (1972).

**14.** *Owens v. Brochner*, 172 Colo. 525, 474 P.2d 603, 607 (1970) ("when the patient discovers or, in the exercise of reasonable diligence, should have discovered the doctor's negligence.").

**15.** *Renner v. Edwards*, 93 Idaho 836, 475 P.2d 530 (1970) (when "the plaintiff knew or should have known of the defendant's negligence."). *See also Johnson v. Stoddard*, 96 Idaho 230, 526 P.2d 835 (1974).

**16.** *Lipsey v. Michael Reese Hospital*, 46 Ill.2d 32, 262 N.E.2d 450, 453 (1970) (when "plaintiff discovered her true condition or should have known of it and the defendants' claimed negligence.").

**17.** *Ruth v. Dight*, 75 Wash.2d 660, 453 P.2d 631, 635 (1969) (plaintiff "should be accorded the right of asserting that she had no reasonable way of ascertaining that a wrong had been done her.").

**18.** *Acker v. Sorensen*, 183 Neb. 866, 165 N.W.2d 74, 77 (1969) when "the act of malpractice with resulting injury was, or by the use of reasonable diligence could have been, discovered." *See also Spath v. Morrow*, 174 Neb. 38, 115 N.W.2d 581, 584 (1962) ("The mischief which statutes of limitations are intended to remedy is the general inconvenience resulting from delay in the assertion of a legal right which it is protectable to assert. [citation omitted] If an injured party is wholly unaware of the nature of his injury or the cause of it, it is difficult to see how he may be charged with a lack of diligence or sleeping on his rights.").

**19.** *Wilkinson v. Harrington*, 104 R.I. 224, 243 A.2d 745 (1968). *Wilkinson* adopted "the 'discovery rule' which, briefly stated, declares that with reference to medical malpractice suits the statute of limitations does not commence until the plaintiff discovers or, in the exercise of reasonable diligence, should have discovered, that he has sustained an injury as a result of the physician's negligent treatment." 243 A.2d at 751. "To require a man to seek a remedy before he knows of his rights, is palpably unjust. . . . No statute should be construed to bring about a patently inane result." 243 A.2d at 753.

**20.** *Iverson v. Lancaster*, 158 N.W.2d 507, 510 (N.D.1968) (when "the act of malpractice with resulting injury is, or by reasonable diligence could be, discovered.").

**21.** *Yoshizaki v. Hilo Hospital*, 50 Haw. 150, 433 P.2d 220, 223 (1967) (when "plaintiff knew or should have known of the defendant's negligence. . . . The injustice of barring the plaintiff's action before she could reasonably have been aware that she had a claim is patent.").

**22.** *Springer v. Aetna Casualty and Surety Co.*, 169 So.2d 171, 173 (La.App.1964) (when "plaintiff actually learned of the negligence," *i.e.*, upon "the patient's discovery of the injury").

**23.** *Seitz v. Jones*, 370 P.2d 300 (Okl.1962) (upon discovery of the "negligence.")

**24.** *Nowell v. Hamilton*, 249 N.C. 523, 107 S.E.2d 112, 113 (1959) (upon "discovery of [the] defendant's asserted wrongful act.").

**25.** "[T]he statute of limitations does not commence to run until the plaintiff discovered his injury, or through the use of reasonable diligence, should have discovered it. [citations omitted]. We must then determine whether the knowledge received by [the] plaintiff . . put him on notice that defendants had been guilty of negligence . . .." *Stafford v. Shultz*, 42 Cal.2d 795, 270 P.2d 1, 7 (1954).

Several other states require that a plaintiff know that he has "a basis for an actionable claim" (New Jersey),[26] that he has "a cause of action" (Oregon and Maryland),[27] or that he has a "claim" (Pennsylvania).[28]

The remaining "discovery" jurisdictions start the running of their statutes of limitations upon the discovery of foreign objects left in plaintiffs' bodies, not upon earlier feelings of pain in the affected areas.[29]

Like every "discovery" jurisdiction surveyed, federal law requires discovery of more than "harmful effect."[30] In *Jordan v. United States*, 503 F.2d 620 (6th Cir. 1974), we squarely rejected a "harmful effect" rule, stating:

> Implicit in the federal cases applying this "discovery" rule is the requirement that the claimant must have received some information, either by virtue of acts he has witnessed or something he has heard, or a combination of both, which should indicate to him, when reasonably interpreted in light of all the circumstances, that his injury was the result of an act which could constitute malpractice.[31]

I believe, after extensive survey, that the majority's test is a totally inaccurate expression of the discovery rule adopted by the Kentucky Court of Appeals in *Tomlinson* and *Hackworth*. Just as Kentucky looked to other jurisdictions to reverse its prior rule, it is reasonable to assume it would adopt the unanimous view of these jurisdictions that Appellants' claim is not time-barred. The majority's test violates the basic principle of the discovery rule—that a plaintiff be aware of the right to bring an action before that right is taken away. As the Oregon Supreme Court stated:

> To say that a cause of action accrues to a person when she may maintain an action thereon and, at the same time, that it accrues before she has or can reasonably be expected to have knowledge of any wrong inflicted upon her is patently inconsistent and unrealistic. She cannot maintain an action before she knows she has one. To say to one who has been wronged, 'You had a remedy, but before the wrong was ascertainable to you, the law stripped you of your remedy,' makes a mockery of the law.[32]

Appellants did not know and could not reasonably have known of the wrong in-

---

**26.** *Lopez v. Swyer*, 62 N.J. 267, 300 A.2d 563, 565 (1973). *See also Yerzy v. Levine*, 57 N.J. 234, 271 A.2d 425, 426 (1970).

**27.** *Frohs v. Greene*, 253 Or. 1, 452 P.2d 564, 565 (1969); *Waldman v. Rohrbaugh*, 241 Md. 137, 215 A.2d 825 (1966); *Jones v. Sugar*, 18 Md.App. 99, 305 A.2d 219 (1973).

**28.** *Gemignani v. Philadelphia Phillies National League Baseball Club*, 287 F.Supp. 465, 467 (E.D.Pa.1967); *Ayers v. Morgan*, 397 Pa. 282, 154 A.2d 788, 791 (Pa.1959). *See also Smith v. Bell Telephone Co.*, 397 Pa. 134, 141–42, 153 A.2d 477, 481 (1959) (requiring that plaintiff recognize "the cause of the harm.").

**29.** *Flanagan v. Mount Eden General Hospital*, 24 N.Y.2d 427, 301 N.Y.S.2d 23, 248 N.E.2d 871 (N.Y.1969); *Christiansen v. Rees*, 20 Utah 2d 199, 436 P.2d 435 (1968); *Johnson v. St. Patrick's Hospital*, 148 Mont. 125, 417 P.2d 469 (1966); *Morgan v. Grace Hospital, Inc.*, 149 W.Va. 783, 144 S.E.2d 156 (1965).

**30.** The Circuits have been uniform in not cutting off the right to relief unless the plaintiff

was aware or should have been aware of the existence of a cause of action for more than two years before bringing suit. *See Hungerford v. United States*, 307 F.2d 99, 102 (9th Cir. 1962) ("claim for malpractice accrues . . . when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged malpractice"); *Quinton v. United States*, 304 F.2d 234, 235 (5th Cir. 1962) ("a malpractice action against the United States can be maintained within two years after the claimant discovered, or in the exercise of reasonable diligence should have discovered, the existence of the acts of malpractice upon which his claim is based"), *followed in Toal v. United States*, 438 F.2d 222, 225 (2d Cir. 1971). *See also Johnson v. United States*, 271 F.Supp. 205, 210 (W.D.Ark.1967).

**31.** 503 F.2d at 622.

**32.** *Frohs v. Greene*, 253 Or. 1, 452 P.2d 564, 565 (1969), quoting *Berry v. Branner*, 245 Or. 307, 312, 421 P.2d 996, 998 (1966).

flicted upon them until April 1970, when they were first informed of Appellees' negligence. Their complaint was filed within a year of that discovery, and is not barred by Kentucky's statute of limitations.

There is an alternative ground on which the District Court's judgment should be reversed. Section 413.190, Ky. Rev.Stat., tolls the running of the limitations period for the time a defendant "by any . . . indirect means obstructs the prosecution of the action." Appellants did not sue earlier because they were assured by Appellees and the doctors to which Appellees referred them that the problem was an unfortunate but natural result of childbirth, which could be corrected by surgery. Appellees thereby obstructed the prosecution of this action, and the limitations period should be tolled until the time Appellants learned that Appellees had misrepresented the cause of the medical problem. There is ample Kentucky case law barring persons such as Appellees from benefiting from their false statements. *See Walter Bledsoe & Co. v. Elkhorn Land Co.*, 219 F.2d 556 (6th Cir. 1955); *Adams v. Ison*, 249 S.W.2d 791 (Ky.1952); *St. Clair v. Bardstown Transfer Line*, 310 Ky. 776, 221 S.W.2d 679 (1949); *City of Louisa v. Horton*, 263 Ky. 739, 93 S.W.2d 620 (1936); *Chesapeake & N. Ry. v. Speakman*, 114 Ky. 628, 71 S.W. 633 (1903); *Metropolitan Life Ins. Co. v. Trende*, 21 Ky.L.Rep. 909, 53 S.W. 412 (1899).

The majority has fashioned a unique and harsh rule of law that is followed in no jurisdiction I have found, and has thereby deprived Appellants of an award of damages intended to compensate for a year of anguish. It has done this despite express language of the Kentucky Court of Appeals that rejects the majority's test in favor of a rule that gives plaintiffs an opportunity to vindicate their legal rights. In the belief that the Kentucky Court of Appeals would not perpetrate the injustice upon Appellants which the majority's holding entails, I respectfully dissent.